# Wytheville.

## SLAUGHTER v. SMITHER.

### JUNE 15, 1899.

#### Absent, Keith, P.

1. WRITTEN CONTRACTS—*Parol Evidence to Vary or Contradict—Fraud in Procurement.*—In the absence of fraud or mistake, evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument; and proof of the subsequent violations of the contemporaneous parol agreement does not establish fraud in the procurement of the written contract.

2. WRITTEN CONTRACTS — *Completed Agreement — Presumption — Parol Evidence.*—If a written contract purports to contain the whole agreement of the parties, and it is not apparent from the writing itself that something is omitted to be supplied, it is presumed that the contract contains every material term and circumstance of the agreement, and parol evidence is not admissible to vary or add to its terms.

3. WRITTEN CONTRACTS—*Promise as Part of Consideration—How Shown.*—A promise which forms a part of the consideration of a written contract is a part of the contract itself, and not a distinct collateral agreement, and can only be shown by writing.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced April 30, 1898, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*H. L. Watson* and *Meredith & Cocke,* for the appellant.

*S. S. P. Patteson,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case alleges that on the 29th day of October, 1894, the appellee entered into a contract with appellant for the purchase of the drug business carried on by appellant in a leased house on Venable street, in the city of Richmond, at No. 2523. The following copy of the alleged contract is filed with the bill to be read as a part thereof:

## " EXHIBIT A.

" RICHMOND, October 29, 1894.

" I hereby agree to take charge of Mr. P. M. Slaughter's drug-store, and to run it for him, as best I can, giving my close personal attention, and doing everything I can to retain all his present trade, to get all the new trade I can just as if I owned the business.

" I agree to draw only $50 a month, not to buy any goods, but to turn all my orders over to Mr. Owens, of the Owens & Minor Drug Co., who will do all the buying for the business, and who will pay all the bills and salaries, who will place to my credit on the bond held by him all the surplus after paying all expenses, and for all purchases.

" I will continue to keep a strict and accurate account of all sales and to conduct the business as Mr. Slaughter has been doing. I will turn all the money taken in each week to Mr. Owens, taking a receipt for it, and at the end of each month have a settlement as above indicated.

" When I have paid in all the sum of $3,500, and all interest at 6 *per cent.* on balance due on it, I am to receive a clear bill of sale for the business. It is clearly understood that the business is to remain Mr. Slaughter's until all the $3,500 and interest is paid."

(Signed)                                    " W. G. SMITHER."

After setting up the foregoing written contract, the bill further alleges as an additional consideration, not mentioned in the written memorial, moving appellee to make the purchase, that appellant then agreed with appellee to remove from the city and discontinue the drug business, and especially in that neighborhood; that, notwithstanding this promise and agreement appellant had since the execution of the contract reopened a drug business in the neighborhood, thereby entailing great loss and damage upon appellee; that but for the false and fraudulent representations of appellant that he would remove from the city and discontinue the drug business, appellee would not have entered into the contract of October 29, 1894.

The prayer of the bill, as finally amended, is that the contract dated October 29, 1894, may be specifically enforced by appellant being required to discontinue business as a druggist in said neighborhood on Church Hill, in the city of Richmond, and that proper damages or compensation for breach of the contract of sale and purchase may be awarded appellee.

A demurrer and answer to this bill was filed by appellant admitting the terms of the alleged conditional sale to be those set forth in the written contract of October 29, 1894, a copy of which is filed with the bill, and in a cross-bill subsequently filed by appellant, specific performance of the written contract is, among other things, prayed for. The answer emphatically denies that appellant ever at any time verbally or in writing promised or agreed with appellee to remove from the city of Richmond, or to discontinue the drug business.

A number of errors have been assigned and discussed, but in our view of the case it is only necessary to consider that assignment of error which relates to the action of the lower court in admitting evidence in support of the alleged parol agreement of appellant to discontinue the drug business.

The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict the terms

of a valid written instrument, except in cases of fraud or mistake, is so familiar and well established that citation of authority in its support would seem to be superfluous. It is a principle founded in wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend, and its violation would be destructive of the most solemn transactions of life. This court has so often, in elaborate opinions, discussed this subject, and adhered without variation to the rule of evidence adverted to, as an established axiom of our jurisprudence, that nothing further can be added without useless repetition. See *Towner* v. *Lucas*, 13 Gratt. 705; *Woodward, Baldwin Co.* v. *Foster*, 18 Gratt. 200; *Martin* v. *Lewis*, 30 Gratt. 672; *Bank* v. *Walton*, 96 Va. 435.

We do not understand it to be contended that any mistake was made in the preparation and execution of the written contract, or that there was any fraud in its procurement. It is true the bill alleges that but for the false and fraudulent representations of appellant, that he would remove from the city and discontinue the drug business, appellee would not have entered into the contract of October 29, 1894; but the facts set forth in the bill show that whatever acts may have been done by appellant, were not acts of fraud in the procurement of the contract, but were, if anything, only subsequent violations of the alleged parol agreement. Proof of the violation of an alleged contemporaneous parol agreement does not establish fraud in the procurement of the written contract; certainly not under the circumstances set forth in the bill.

As was said in *Towner* v. *Lucas, supra,* p. 716: " It is reasoning in a circle to argue that fraud is made out when it is shown by oral testimony that the obligee, contemporaneously with the execution of a bond, promised not to enforce it. Such a principle would nullify the rule; for conceding that such an agreement is proved, or any other contradicting the written instrument, the party seeking to enforce the written agreement according to its

terms, would always be guilty of fraud. The true question is,
Was there any such agreement? And this can only be estab-
lished by legitimate testimony. For reasons founded in wisdom,
and to prevent frauds and perjuries, the rule of the common
law excludes such oral testimony of the alleged agreement; and
as it cannot be proved by legal evidence, the agreement itself,
in legal contemplation, cannot be regarded as existing in fact.
Neither a court of law or of equity can act upon the hypothesis
of fraud where there is no legal proof of it."

The appellee bases his right to introduce oral proof to sustain
his allegations upon the ground that the alleged promise of
appellant not to go into the drug business was a distinct collateral
agreement, and not a part of the written contract of sale.

This court has manifested no disposition to fritter away the
rule of evidence in question by nice distinctions to meet the hard-
ships, real or supposed, of particular cases. The record of the
case at bar furnishes, however, no ground in support of the dis-
tinction relied on by the appellee. The written contract filed
with the bill is a clear and complete memorial, needing no expla-
nation, and lacking in nothing that would add to its binding
force. It connot be assumed that the written contract was de-
signed as an imperfect expression of the parties' agreement, from
the mere fact that the written memorial contains nothing on the
subject to which the parol evidence is directed. On that as-
sumption the rule which excludes parol proof as a means of
adding to the written contract would be entirely abrogated. And
to permit parties to lay a foundation for adding to the contract
by oral testimony that they agreed that part only of their con-
tract should be reduced to writing would open the door to the
very evil the rule was designed to avoid. The only evidence of
the completeness of a written contract, as a full expression of the
terms of the agreement, is the contract itself. Where parties
have deliberately put their mutual engagements into writing, in
such language as imports a legal obligation, it is only reasonable

to presume that they have introduced into the written instrument every material term and circumstance; and consequently all parol testimony of conversations held between them, or declarations made by either of them, whether before, after, or at the time of the completion of the contract, will be rejected. If the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied, parol evidence to vary or add to its terms is not admissible. *Naumberg* v. *Young*, 44 N. J. L. 331.

.It is perfectly clear from the allegations of the bill that the promise of appellee to discontinue the drug business, if made at all, was a part of the contract of sale agreed upon at the time their understanding was reduced to writing. The bill alleges that the promise not to go into the drug business was part of the consideration moving the appellee to make the purchase. The appellee is the only witness who testifies in his behalf as to what took place in the making of the contract. His evidence shows that before signing the contract he insisted that appellant's alleged promise not to reopen the drug business should be especially stipulated in the written memorial, but that appellant rejected the proposition, saying " his word was as good as his bond," and that appellee, " thinking he was striking a bonanza, and being anxious to get hold of it," concluded to sign the contract and rely on appellant's verbal promise not to reopen the drug business. No further comment is necessary to make clear the fact that the alleged parol promise, if made, was part of the consideration, and therefore necessarily part of the contract agreed upon between the parties for the conditional sale and purchase of the drug business in question. The contention, therefore, now made by appellee, that the alleged parol promise was a distinct collateral agreement, forming no part of the contract which was reduced to writing, is wholly untenable.

The alleged oral promise of appellant to discontinue the drug business now sought to be established by parol evidence mate-

rially changes the terms of the written contract, and adds thereto an entirely new consideration, not mentioned in the written memorial between the parties. In legal contemplation the contemporaneous parol contract, sought to be enforced by appellee, does not exist. The common law rule of evidence which declares such a contract incapable of proof, may be traced to a remote antiquity and is of the utmost importance. As was said in *Towner* v. *Lucas, supra,* any other rule would weaken confidence in all securities for debt. Matters in writing, instead of finally importing the certain truth and agreement of the parties, would be a snare and delusion. The party relying on an instrument in writing as the final result in which all previous negotiations have centered, would be met and controlled by an averment to be proved by the uncertain testimony of slippery memory.

For these reasons we are of opinion that appellee was not entitled to the relief granted by the court. The decree appealed from must therefore be reversed.

It appearing, however, from the record that no action has been taken by the Chancery Court upon the cross-bill filed by appellant, the case is remanded for such further proceedings as may be appropriate, and not in conflict with the views herein expressed.

*Reversed.*