## Richmond.

CARLIN AND COMPANY v. FRASER.

March 22, 1906.

Absent, Cardwell, J.

1. EVIDENCE—*Parol Evidence to Vary Written Contract—Case at Bar—Waiver.*—In the absence of fraud or mistake, parol evidence will not be received to vary, alter or contradict the terms of a valid written instrument. Nor will it be assumed that the written instrument was designed as an imperfect expression of the agreement of the parties simply because it is silent on the subject to which the parol evidence is directed. Where parties have deliberately put their mutual agreements in writing, in language importing a legal obligation, it will be presumed that the whole contract was put into the writing. Evidence of prior or contemporaneous conversations will not be received. In the case at bar the parol evidence offered was of the objectionable nature above mentioned, and no agreement was shown to change or to waive the terms of the written contract after it was executed.

2. INSTRUCTIONS—*Misleading—Fraud not Charged—Inadmissible Evidence.*—An instruction which deals with questions of fraud or fraudulent concealment in procuring a contract, when no fraud is alleged, or which is based on inadmissible evidence, is misleading, and should not be given. The error in giving such an instruction, under the conditions mentioned, is not harmless, but fundamental.

3. INSTRUCTIONS—*Ignoring Material Part of Case—Special Plea of Set-Off—Verdict.*—Where a defendant has filed a special plea of set-off and has introduced evidence tending to support it, it is error to ignore entirely the defendant's case and instruct the jury to find for the plaintiff if they believe he has established the items of his account sued for. The jury should be instructed that the amount found to be due the plaintiff was to be offset by whatever sum, if any, they might believe from the evidence was due from the plaintiff to the defendant, and that the verdict should be for the party to whom the balance was found due.

Error to a judgment of the Circuit Court of York county in an action of assumpsit. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*D. Tucker Brooke* and *M. C. Elliott,* for the plaintiffs in error.

*S. Gordon Cumming, B. A. Lewis* and *Wm. C. L. Taliaferro,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

On the 21st day of February, 1899, a contract in writing was entered into between Charles Fraser, of the first part, and Car-lin & Co., of the second part, for the sale of certain piles. So far as necessary to be here referred to, this contract provided as follows:

"The party of the first part hereby agrees to furnish and deliver to the parties of the second part, at such point or points along the water front of the U. S. Naval Academy, at Annapolis, Md., all the piles required, as set forth on the drawings and described in the specifications of Earnest Flagg, architect, for the building of a sea wall and buildings at said Naval Academy, subject to the inspection and approval of the said architect, or his representative, and of the engineer in charge of the work appointed by the U. S. Navy Department. . . . And the parties of the second part hereby agree to pay to the party of the first part for said piles, delivered at said Naval Academy, after approval by said architect, or his representative, and said engineer in charge, at the prices set forth in the attached sched-

ule, which forms a part of this agreement. . . . And it is further agreed that in the event of the party of the first part failing, neglecting, or refusing to furnish and deliver said piles at such time and in such quantities and lengths as the said parties of the second part shall order and direct, or to furnish and deliver such piles as will comply with the conditions of inspection and approval as herein described, then the parties of the second part shall be at liberty to enter into agreement with other parties for the furnishing and delivering of said piles, and the party of the first part agrees to reimburse the parties of the second part for any additional cost or expense incurred by them by reason of such default or neglect by the party of the first part." The specifications with which the piles to be furnished were to comply provided as follows: "The piles shall be of white oak, Georgia yellow pine, spruce, hemlock, or Norway pine, straight, true, sound and fine straight grained, each to be the number of feet in length that the conditions may require."

In pursuance of this contract the first shipment by Fraser was three rafts of piles, at the aggregate price of $3,049.36. The fact is established by the record that these piles were rejected by the constituted authorities of the government as not complying with the specifications. After these piles were rejected, no further effort was made to comply with the contract in question, and the defendants made other arrangements for securing the necessary piles. Subsequently, Carlin & Co. used some of the rejected piles in doing certain preliminary work necessary for executing their contract with the governmnet, and paid Fraser for those so used the sum of $670, which was duly credited.

This action of assumpsit was brought by Charles Fraser to recover of Carlin & Co. the sum of $6,923.95, due by open

account, consisting of several items, the first and largest item
being $2,379.96, the balance claimed to be due on the three
rafts of piles mentioned, which were rejected by the govern-
mnt, after crediting the $670 paid to Fraser by Carlin & Co.
for those piles used by them in their preliminary work. The
account sued on is alleged in the declaration to be for damages
sustained by the plaintiff in consequence of the failure of the
defendants to keep and perform the contract already adverted to.

To this action the defendants, Carlin & Co., plead *non assump-
sit,* and filed, in addition, a special plea of set-off, in which
they set forth the contract which forms the basis of the plain-
tiff's action, and aver that the plaintiff had neglected, failed,
and refused to deliver, as agreed upon, the necessary piles for
the government work, and that in pursuance of the terms of the
contract they had bought the piles at the most reasonable prices
obtainable in order to carry out their contract with the govern-
ment; that by reason of the failure of the plaintiff to keep his
contract and the necessity thus imposed upon them of buying
the piles elsewhere, they had sustained a loss of $29,702.42,
which they asked to be allowed to set off against the plaintiff's
demand.

Upon the issue thus joined, the jury rendered a verdict in
favor of the plaintiff for $6,911.20, which the lower court re-
fused to set aside, giving judgment in accordance therewith;
and thereupon this writ of error was awarded.

The first five bills of exception were taken to the action of
the court in admitting certain evidence on behalf of the plain-
tiff over the protest of the defendants. All of the evidence
objected to and covered by these exceptions tended to vary and
contradict the written contract between the parties, and was
plainly inadmissible. The contract clearly and expressly pro-
vided that all piles furnished were to be according to specifica-

.tions and subject to the inspection and approval of the government representative. These provisions were manifestly the most important in the contract to the defendants, because the piles purchased were for the purpose of building a sea wall for the United States Government, as stated in the contract, and unless those furnished were accepted by the government, they were valueless to the defendants. Notwithstanding these plain and important provisions of the contract, the plaintiff was permitted to introduce evidence tending to destroy these terms by setting up alleged conversations and negotiations prior to the execution of the contract, the object and effect being to establish the plaintiff's right to deliver piles not in accordance with the government specifications, although the government should refuse to accept them.

It is not pretended that there was any mistake in the preparation and execution of the written contract; on the contrary the plaintiff testifies that he understood that the piles to be furnished were subject to the approval of the representative of the government, further stating that it was clear to his mind that if he failed, refused, or neglected to furnish such piles as would comply with the conditions of inspection and approval, as described in the contract, the defendants would be at liberty to enter into agreement with other parties for such piles, and that he would be responsible to the defendants for any additional cost or expense incurred by them in consequence of his default.

No fraud in connection with the contract is either alleged or proven. The written contract filed by the plaintiff in this case is a clear and complete memorial, needing no explanation, and lacking in nothing that would add to its binding force. The general principle that evidence of a cotemporaneous parol agreement is not admissible to vary or contradict the terms of a valid written instrument, except in cases of fraud or mistake, is

so familiar and well established that citation of authority in its, support would seem to be superfluous. It is a principle founded in wisdom, and cannot be too carefully guarded. Upon its enforcement the certainty and sanctity of written contracts depend, and its violation would be destructive of the most solemn transactions of life. This court has often discussed this subject, and adhered without variation to the rule of evidence adverted to, as an established axiom of our jurisprudence. *Towner* v. *Lucas*, 13 Gratt. 705; *Allen* v. *Crank*, 2 Va. Dec. 279, 23 S. E. 772; *Slaughter* v. *Smither*, 97 Va. 202, 33 S. E. 544.

In the case last cited it is said: "It cannot be assumed that the written contract was designed as an imperfect expression of the parties' agreement, from the mere fact that the written instrument contains nothing on the subject to which the parol evidence is directed. On that assumption the rule which excludes parol proof as a means of adding to the contract would be entirely abrogated. And to permit parties to lay a foundation for adding to the contract by oral testimony that they agreed that part only of their contract should be reduced to writing would open the door to the very evil the rule was designed to avoid. The only evidence of the completeness of a written contract as a full expression of the terms of the agreement is the contract itself. Where parties have deliberately put their mutual engagements into writing, in such language as imports a legal obligation, it is only reasonable to presume that they have introduced into the written instrument every material term and circumstance, and consequently all parol testimony of conversations held between them, or declarations made by either of them, whether before, after, or at the time of the completion of the contract, will be rejected. If the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be

supplied, parol evidence to vary or add to its terms is not admissible."

Applying these well-settled principles to the case at bar, we hold that it was error to admit the evidence under consideration.

We are further of opinion that there was no agreement shown to change or to waive any of the terms of the written contract after it was executed. The defendants could hardly have intended to waive the provisions out of which this controversy grows, because to have done so would have been to permit the plaintiff to load them up with piles that the government would not accept, and which would, therefore, be valueless to the defendants.

A further assignment of error is to the action of the court in giving the following instruction:

"The jury are instructed that if they believe from the evidence that the said Carlin & Co., or their representatives, who negotiated a contract with the said Fraser to supply piles, fraudulently concealed from, or failed to divulge to, said Fraser before and at the time of the execution of the written contract between the parties that the government specifications required the furnishing of Georgia yellow pine piles, and requested his quotations on Maryland or Virginia· piles; then they are instructed that the failure of the said Fraser to supply Georgia yellow pine piles was not a breach of contract on his part; and that he was not responsible for the rejection of the piling furnished by him to Carlin & Co., but that the said Carlin & Co. are indebted to him for the piling furnished."

We are of opinion that it was error to give this instruction. It is misleading because it deals with the question of fraud or fraudulent concealment by the defendants of certain facts, whereas no fraud was alleged. Nothing, least of all fraud, can be the subject of trial until it is put in issue. *Alsop* v. *Catlett,*

97 Va. 364, 370, 34 S. E. 48. It is further misleading because based upon evidence that was inadmissible. The error in giving this instruction was not harmless, as contended, but fundamental.

Bills of exception 8 and 9 cover the two following instructions given on behalf of the plaintiff:

"The jury are instructed that if they believe, from the evidence, that the subsequent agreement between said Fraser and Carlin & Co., or the latter's authorized representative, made at Annapolis, after the rejection of the first piling delivered there by Fraser, was that said Fraser was to receive ten *per cent.* commissions on the cost of piling purchased in South Carolina, delivered at Annapolis, then they shall find for the plaintiff on this item an amount equal to ten *per cent.* of what amount they believe, from the evidence, to have been the cost of purchasing and delivering such piling at Annapolis."

"The jury are instructed that if they believe, from the evidence, that any or all the items specified in the bill of particulars filed with the declaration in this case were supplied by Fraser to Carlin & Co., pursuant to an agreement made between them, or between Fraser and Carlin & Co.'s authorized representative, then they are instructed that they must find for the plaintiff in an amount equal to the aggregate of such items or such part of them as they believe, from the evidence, to have been so furnished."

These instructions are objected to because they ignore the special plea of set-off, and direct the jury to find for the plaintiff regardless of his indebtedness to the defendants, whereas such instructions should have told the jury that in the event of finding for the plaintiffs, as therein set forth, the amount should be offset by whatever sum they might believe, from the evidence, the defendants were entitled to recover under their special

plea, and should render a verdict for the party to whom the balance was found to be due.

After the plaintiff had failed to comply with the written contract of February 21, 1899, by furnishing piles acceptable to the government, he and the defendants entered into a parol agreement, by the terms of which the plaintiff was to go to South Carolina and buy piles for the defendants, receiving as compensation for this service ten *per cent.* commission upon the cost of the piles so purchased and delivered at Annapolis. This is the item referred to in the instruction covered by bill of exception No. 8.

All of ·the items of the plaintiff's bill of particulars are referred to in the instruction covered by bill of exception No. 9. The evidence tended to show that the defendants sustained a loss approximating $30,000 as a result of the plaintiff's alleged breach of the written contract, which, under the express terms of that contract, the plaintiff was bound to make good.

We are of opinion that the objection to the instructions under consideration was well taken. Under such circumstances it is the better practice that the instructions should not ignore the defendant's case, but should conclude by telling the jury that the amount found by them to be due the plaintiff was to be offset by whatever sum, if any, they might believe, from the evidence, was due from the plaintiff to the defendant, and that the verdict should be for the party to whom the balance was found due.

As the judgment of the Circuit Court must be reversed, it is not necessary or expedient to consider other questions discussed which may not arise on another trial, or as to which the evidence may be different.

For these reasons the judgment complained of must be re-

versed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*