# Wytheville.

## FARMERS MANUFACTURING CO. v. WOODWORTH.

### June 10, 1909.

1. EVIDENCE—*Parol Evidence—Incomplete Writing.*—While parol evidence of prior or contemporaneous agreements will not be received to vary, alter or contradict the terms of a valid written contract, complete on its face, this rule of exclusion has no application where it is apparent from the writing itself that it does not embody the entire agreement. In such case, the writing being incomplete, it must be supplemented by other evidence, not to contradict or vary its terms, but to establish the real contract between the parties.

2. EVIDENCE—*False Representations—Parol Evidence.*—Parol evidence is admissible to prove that one party was induced to enter into a contract by the false representations of the other. Such evidence is equally admissible, whether the contract was written or verbal.

3. WITNESSES—*Death of a Party to Contract—Agent or Survivor.*—The agent of a corporation contracting for his principal is not rendered incompetent to testify by reason of the death of the other contracting party.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of *assumpsit*. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Jeffries, Wolcott & Wolcott* and *V. H. Kellam,* for the plaintiff in error.

*Brooke & Brooke,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, the Farmers Manufacturing Company, applied to the late firm of T. W. Godwin & Co., of which the defendant in error, A. L. Woodworth, is the surviving partner, to manufacture for it an amusement device called a "Revolving Parachute," the general design of which is described as follows: "A circular platform was to be elevated by means of a revolving upright screw, or shaft, driven by electric power applied to machinery at its base. As this shaft revolved the platform was forced upward, and when it reached the top of·the shaft was stopped, and the platform released and left free to descend by gravitation, revolving around the shaft."

Numerous interviews were had between the parties touching the construction of this contrivance, which culminated in the following correspondence:

"Norfolk, Va., July 3, 1906.

"J. Frank East, Esq.,

"Norfolk, Virginia.

"Dear Sir:

"We beg to advise you that we will build the steel structure, with sixty feet of screw as per plans submitted and erect the same on the foundation prepared by you, * * * for the sum of five thousand ($5,000) dollars. It is further understood that you are to transport all the material, taking the same from our works and delivering the same at the point and alongside the foundation where the structure is to be erected * * * and free of cost to the builders. That the structure shall be ready for delivery at our works by the 15th of September, 1906. The brake and air cushion shall be efficient for the purpose intended. The tower roof shall be of galvanized metal and oval in form. The two approaches for reaching the floor of the observation tower shall be inclosed. All black iron work to be covered with two coats of mineral paint. The structure and

mechanism to be built on the lines of the illustrated model submitted.

"Respectfully submitted,

"T. W. GODWIN & COMPANY."

"Norfolk, Va., July 10, 1906.

"Virginia Iron Works (T. W. Godwin & Company),

"Norfolk, Virginia.

"Dear Sir:

"We are in receipt of your favor of the 3rd, reference to building the steel structure and accept proposition, and ask that work proceed with all possible dispatch.

"Yours respectfully,

"FARMERS MFG. CO.,

"By J. FRANK EAST."

When completed, the structure was erected on the grounds of the Jamestown Exposition Company; but it proved unsatisfactory, and was condemned by the mechanical expert of that company, whose duty it was to inspect and pass on all structures set up on the grounds. It was pronounced unsafe and dangerous to human life, and its operation within the grounds forbidden.

Thereupon, this action of *assumpsit* was brought by the plaintiff in error against Woodward, surviving partner of himself and T. W. Godwin, deceased, to recover damages for their alleged breach of contract in connection with the construction of the machine. To a judgment on behalf of the defendant.this writ of error was allowed.

There are three counts in the declaration, which may be thus summarized:

1. That the plaintiff was ignorant of the nature and mechanism of the machine and how it ought to be built so as to operate properly, and whether it could be used with safety to human

life and so constructed that the platform would ascend and descend in ten minutes (that being the speed agreed on in order to make it a financial success). That T. W. Godwin & Co. were mechanical experts and skilled in such matters, and the plaintiff submitted the model to them and explained the purposes for which the device was intended, telling them that it must be so constructed as to be capable of being operated with safety and within the time limit prescribed; and that unless assured that these essentials could be attained, the plaintiff did not desire the machine to be made. That the manufacturers submitted a plan of the device, and assured the plaintiff that if built according to that plan it would meet the specified requirements; and promised and warranted that if they were awarded the contract of construction, the machine would be safe and suitable for the purpose mentioned. That the plaintiff, relying upon these warranties, and in consideration thereof, gave the contract to T. W. Godwin & Co. That the warranties were broken in the particulars set forth in the declaration, and the machine was wholly worthless for the purposes intended.

2. The second count is founded upon the false representations of T. W. Godwin & Co. as to a fact within their knowledge as experts, that the machine, if constructed by them according to the plans submitted, could be operated without danger to human life and at the required speed, and would be suitable for the uses contemplated. That relying upon these representations, the plaintiff entered into the contract; and that the representations were false, and the machine worthless.

3. The third count alleges the breach of an implied warranty on the part of the manufacturers, that the machine contracted for would be reasonably suitable for the purposes intended, which purposes were known to them, and also the fact that the plaintiff relied on their judgment and skill in the construction of the device.

The plaintiff set out circumstantially what it expected to

prove under the several counts of the declaration; but, upon objection, the court excluded the evidence, being of opinion that the correspondence contained in the letters of July 3 and 10, 1906, constituted a complete written contract between the parties, the terms of which it was not permissible to vary or add to by parol evidence.    The trial proceeded upon that theory, and naturally resulted in a verdict for the defendant.

The legal proposition is not controverted, that a contract in writing, complete on its face, cannot be altered or contravened by parol evidence of inconsistent agreements and undertakings previously or contemporaneously made.    *Towner* v. *Lucas,* 13 Gratt. 705; *Virginia Hot Springs Co.* v. *Harrison,* 93 Va. 569, 25 S. E. 888; *Slaughter* v. *Smither,* 97 Va. 202, 33 S. E. 544; *Carlin* v. *Fraser,* 105 Va. 216, 53 S. E. 145.

The rule is thus stated in *Slaughter* v. *Smither, supra:* "If the written contract purports to contain the whole agreement, and it is not apparent from the writing itself that something is left out to be supplied, parol evidence to vary or add to its terms is not admissible."

In the instant case, however, it is obvious from the letters themselves, read in connection with the plans to which they refer, that there were necessarily other provisions of the contract which do not appear on the face of the writings.    The letter of July 3, 1906, which composes the body of the alleged written agreement, is of the most general character and bears internal evidence of the fact that to be intelligible it must be read in the light of outside matters in the minds of the parties. The agreement to build "the steel structure" dissociated from previous negotiation as to the particular structure contemplated by the parties and to which it manifestly refers contains no intimation of what was really in the minds of the contracting parties.    "Structure" is a term of general signification, and in the absence of explanatory words conveys no definite idea of what is intended.

Nor is the situation materially aided by inspection of the

plans referred to in the letter.    They are drawn to no scale and contain no specifications, but are blue-prints presenting merely in general outline tracings of the proposed device.

In fine, it would not be possible for one possessed of no information other than that supplied by the alleged written agreement to form an intelligent idea of the contemplated structure.

The rule of exclusion of parol evidence has no application where it is apparent from the writing itself that it does not embody the entire agreement.    In such case, the writing being incomplete, it must be supplemented by other evidence, not to contradict or vary its terms, but to establish the real contract between the parties.

Besides, parol evidence was admissible under the second count of the declaration to prove the alleged false representations made by T. W. Godwin & Co. to induce the plaintiff to enter into the contract.    Such evidence would be equally admissible, whether the contract were written or verbal.    *Grim* v. *Byrd,* 32 Gratt. 293, 300; *Rorer Iron Co.* v. *Trent,* 83 Va. 397, 2 S. E. 713, 5 Am. St. Rep. 285; *Herron* v. *Dibrell,* 87 Va. 289, 296, 12 S. E. 674; *Wilson* v. *Carpenter,* 91 Va. 183, 21 S. E. 243 50 Am. St. Rep. 824; *Grosh* v. *Ivanhoe, &c. Co.,* 95 Va. 161, 27 S. E. 841; *Wren* v. *Moncure,* 95 Va. 369, 28 S. E. 588; *Guarantee Co.* v. *National Bank,* 95 Va. 480, 491, 28 S. E. 909.

It follows from the foregoing views that the case must be tried *de novo* along essentially different lines; and that fact renders it unnecessary to notice subordinate assignments of error upon questions which may not arise at the next trial.

So, also, with respect to the allegations of the third count of the declaration.    If a proper case shall arise for the application of the doctrine of implied warranty of fitness of the machine for the purposes for which it was intended, the jury can be instructed upon that aspect of the case.

The defendant in error assigns as cross-error the action of the court in admitting the testimony of the witness, East.    It

is insisted that Godwin being dead, East was rendered incompetent to testify by the terms of the statute.

East was the agent of the plaintiff, and this court held in the case of *Mutual Life Insurance Co.* v. *Oliver,* 95 Va. 445, 28 S. E. 594, that the agent of a corporation contracting for his principal is not rendered incompetent to testify by reason of the death of the other contracting party.

For these reasons the judgment of the circuit court must be reversed, the verdict of the jury set aside, and the case remanded for a new trial to be had not in conflict with the views expressed in this opinion.

*Reversed.*