[No. 32881.  Department One.  August 18, 1955.]

H. B. NIELSEN et al., Respondents, v. NORTHERN EQUITY CORPORATION, Appellant.[1]

Torbenson, Baum & Thatcher, for appellant.

Matsen, Cory & Matsen, for respondents.

[1]Reported in 286 P. (2d) 1031.

HAMLEY, C. J.—H. B. Nielsen and Mrs. Nielsen, vendees under a real-estate contract, brought this action for specific performance. They alleged that the balance then due on the contract was $19,008.82, and offered to pay this sum to the vendor, Northern Equity Corporation. Ted Quackenbush and Mrs. Quackenbush are the principal stockholders of the corporation.

In its answer, defendant alleged that the balance due was $25,969.35 plus certain interest. The corporation also claimed a forfeiture of the contract for delinquency in the payment of monthly installments.

Judgment was entered for plaintiffs, decreeing specific performance upon the payment by plaintiffs of $16,158.78 plus certain interest. Defendant appeals.

There is no disagreement between the parties as to the purchase price of the real estate. It was forty thousand dollars. The parties are in dispute, however, as to the agreed purchase price of certain personal property on the premises. Appellant sold this property to respondents in connection with the real-estate transaction. Appellant contends that the agreed price of this personal property was ten thousand dollars, five thousand dollars of which was paid when the bill of sale was delivered, and five thousand dollars of which was to be paid a few months later. Accordingly, when respondents later paid such a sum, appellant applied it to pay the balance which it asserts was due on the personal property.

Respondents, on the other hand, contend that the agreed price of the personal property was five thousand dollars, which was paid when the bill of sale was delivered. It is their position that the five-thousand-dollar payment which was later made should have been applied on the purchase price of the real-estate contract.

We are asked to review the findings of fact which reflect respondents' version of this transaction. We therefore turn to the record.

The property in question, which had been operated as a restaurant, is situated at 711 Elliott avenue west, in the

city of Seattle. On August 28, 1948, H. B. Nielsen and Ted Quackenbush (for the corporation) executed an earnest money agreement under which Nielsen acquired the right to purchase this real estate and certain inventoried personal property on the premises for fifty thousand dollars.

The agreement did not segregate the purchase price as between the real estate and the personal property. It recited that twenty-five hundred dollars had been paid by check as earnest money in part payment of the purchase price. It also provided that twenty-five hundred dollars was to be paid on October 5, 1948, or upon possession, and three hundred fifty dollars per month or more thereafter, except that on March 1, 1949, and August 1, 1949, payments of five thousand dollars or more were to be made.

Respondents took possession about October 5, 1948, and thereafter reopened the restaurant under the name "Selandia Smorgasbord."

Late in October, 1948, the parties executed escrow instructions to the Washington Title Insurance Company. In this connection, there were delivered to that company the following: the twenty-five-hundred-dollar earnest money check; Nielsen's additional check for twenty-five hundred dollars; a bill of sale to personal property on the premises, as listed in an attached inventory; and a real-estate contract.

The bill of sale recited "in consideration of the sum of Five Thousand ($5,000) Dollars . . ." The inventory attached to the bill of sale was substantially the same as the inventory attached to the earnest money agreement, except for the omission of "16 tables upstairs." The real-estate contract described the same real estate as was described in the earnest money receipt. It set forth a purchase price of forty thousand dollars, the unpaid balance of which was to be paid at three hundred fifty dollars a month, except that, on August 5, 1949, a payment of five thousand dollars was required.

Nielsen testified that the intent of the parties, as shown by the escrow instructions, bill of sale, and real-estate con-

tract, was to reduce the over-all price for the real estate and personal property from fifty thousand dollars to forty-five thousand dollars. In explanation, he stated that, when the earnest money agreement was executed, he had counted on the proceeds of a sale he had made of other restaurant property—the so-called Hepp-Black contract. He later experienced difficulty in obtaining a transfer of the lease on that restaurant to the new owners, and it appeared that he might have to repossess that property. Nielsen testified that, because of this development, he told Quackenbush, prior to the time that the escrow instructions were executed, that the Nielsens might not be able to complete the purchase of the Elliott avenue property in accordance with the earnest money agreement. It was Nielsen's testimony that Quackenbush then agreed to sell the real estate for forty thousand dollars and the personal property for five thousand dollars.

Quackenbush denied that there was any conversation with Nielsen, subsequent to the earnest money agreement, concerning the gross purchase price. He testified that their conversation concerned only the title to the personal property. According to Quackenbush, Nielsen wanted a clear title to the personal property so he could sell or trade it in on new furnishings. It was accordingly orally agreed, Quackenbush testified, that Nielsen, on the payment of five thousand dollars, would be given a bill of sale to this property, and that the balance (five thousand dollars) would be paid "as per our agreement in the earnest money receipt."

Payments of three hundred fifty dollars were made in the months of December, 1948, and January, February, and March, 1949. In April, 1949, appellant agreed to accept an assignment of respondents' interest, as vendor, in the Hepp-Black contract. The unpaid balance due on this contract was $10,832.91. Upon receiving the assignment of this contract, appellant gave respondents two receipts, both dated April 1, 1949. One of these acknowledged receipt of five thousand dollars "on purchase of 711 Elliott Ave. West property." The other acknowledged receipt of $5,832.91, "to be applied

on the contract of purchase of 711 Elliott Ave. West, Seattle, Wash."

Nielsen testified that it was understood that this total credit of $10,832.91 would be applied on the real-estate contract. It is undisputed that, upon receipt of this assignment, appellant agreed to waive the monthly payments until September, 1949, including the five-thousand-dollar payment due in August, 1949. The three-hundred-fifty-dollar monthly payments were resumed at that time.

In June, 1952, respondents sold Selandia to one Gunnar Hansen. In order to complete this sale, respondents sought a conveyance from appellant upon payment of the amount respondents considered to be due. It was then that the disagreement as to the purchase price came to light.

At the trial, the fact was developed that respondents' books of account, as maintained by Robert D. Lyman, a licensed public accountant, had at all times been set up on a basis of forty thousand dollars as the purchase price of the real estate, and ten thousand dollars as the purchase price of the personal property. In keeping therewith, income tax returns, financial statement given to the bank, and periodic statements given to Nielsen consistently showed this information.

In explanation of this apparent inconsistency between the books of acount and respondents' present position, Nielsen stated that the books had been set up on the basis of the earnest money agreement. When the parties had departed from that agreement, he had neglected to tell the accountant of the change. A small personal journal, kept for a time by Nielsen, showed a balance which is in substantial agreement with respondents' present position. Appellant's books were set up on a basis which showed the total purchase price to be fifty thousand dollars, unsegregated as between real estate and personal property.

The trial court apparently accepted Nielsen's explanation as to the reason respondents' books of account showed forty thousand dollars for real estate and ten thousand dollars for personal property. The court also apparently chose to be-

lieve Nielsen's version of his conversations with Quackenbush after the earnest money agreement had been executed, and at the time of the Hepp-Black assignment.

The record reveals some good indications why the trial court chose to believe Nielsen. Most important of these is the fact that Nielsen's version accords with the final form of the contract writings. The escrow instructions expressly authorized the transfer of documents on the basis of a forty-thousand-dollar real-estate contract and a bill of sale stating a consideration of five thousand dollars. It seems unlikely that the parties would go to the trouble of setting up an escrow agreement but fail to include a reference to a substantial part of the purchase price.

The bill of sale, considered apart from the escrow agreement, tends to substantiate respondents' position. It recites a consideration of five thousand dollars, which is obviously not a nominal amount. The form of the receipts given in connection with the assignment of the Hepp-Black contract, quoted above, further supports respondents' contention. This is particularly so when considered in connection with the further circumstance that, after receiving the assignment of the Hepp-Black contract, appellant gave respondents a five-month respite in the monthly payments under the real-estate contract.

Also very persuasive evidence in support of the findings of fact is that which shows that Quackenbush was an experienced businessman, with more than twenty years experience in the discount business. It is understandable that the trial court was unable to accept his testimony that, apart from the escrow instructions and other written documents, there was an oral and wholly unsecured side agreement whereby respondents would pay an additional five thousand dollars on the purchase of the personal property.

In our view, the findings of fact concerning this matter are supported by clear, cogent, and convincing evidence.

The conclusion just stated makes it unnecessary for us to consider respondents' contention that most of the evi-

dence bearing upon this matter was inadmissible, under the parol evidence rule. The trial court so held. However, following what we regard as good practice where there is doubt as to whether certain evidence is admissible, the trial court received the evidence and entered findings thereon, thus completing the record for effective review.

It is also unnecessary for us to consider appellant's argument that respondents had the burden of proving, by clear, cogent, and convincing evidence, a modification of the earnest money agreement. Whether or not that was respondents' burden, we are satisfied that the evidence in their favor measures up to that standard.

■ Since the earnest money agreement was executory on both sides, no new or additional consideration was necessary to make the modification agreement enforcible. *La Plante v. Hubbard*, 125 Wash. 621, 217 Pac. 20; *Hunters Cattle Co. v. Carstens Packing Co.*, 129 Wash. 377, 225 Pac. 68; *Meyer v. Strom*, 37 Wn. (2d) 818, 226 P. (2d) 218.

■ A penciled preliminary copy of appellant's income tax report was properly rejected as not being the best evidence; and, in any event, the exclusion of this exhibit was not prejudicial.

■ The trial court did not err in finding that the two hundred eighty-one dollars paid by appellant to the Kalberer Hotel Supply Company was not a proper charge against respondents. Although the evidence concerning this matter is conflicting, we are unable to say that it preponderates against the finding.

The judgment is affirmed.

SCHWELLENBACH, DONWORTH, FINLEY, and OTT, JJ., concur.