[No. 34535.  *En Banc.*  January 14, 1960.]

RODNEY A. BECKER *et al., Respondents,* v. LAGERQUIST
BROTHERS, INC., *Appellant.*[1]

'Reported in 348 P. (2d) 423.

*McCann, Barnett & Towne* (*Vernon W. Towne,* of counsel), for appellant.

*MacDonald, Hoague & Bayless,* for respondents.

FOSTER, J.—Appellant corporation, defendant below, appeals from a judgment requiring specific performance of an oral agreement to pave a street or, in the alternative, to pay the cost thereof.

The gravamen of appellant's contention is that, under the parol evidence rule, the earnest-money receipt precluded extrinsic proof of an oral agreement to pave the street. Quite recently, in *Barber v. Rochester,* 52 Wn. (2d) 691, 328 P. (2d) 711, we reviewed the subject and concluded that the so-called parol evidence rule was not an exclusionary device but, on the contrary, was a basic tenet of substantive law and the trial court's duty was to consider all relevant extrinsic evidence, either oral or written, in order to determine if the writing embraced the entire agreement of the parties. If it does, the writing is the sole memorial of the agreement, otherwise it is not.

A detailed statement of the evidence is not required to understand the claimed errors.

The appellant corporation acquired a tract of land adjacent to the city of Seattle. Thereafter, it subdivided said tract into building lots and offered the same for sale. To promote the sale of the lots, appellant advertised that it would pave the streets. It employed, for this purpose, display advertising and an elaborate illustrated brochure. Moreover, the court found that respondents' purchases were

made in response to direct oral promises to them by appellant's agent that the street in question would be paved.

Sales of the property were made by agents or brokers who gave earnest-money receipts which, while varying in form, all contained a recital that there were no agreements not contained in the receipt.

The trial court further found that neither party contemplated that the earnest-money receipt covered the entire agreement between them.[2]

It is fitting to say that the primary function of an earnest-money receipt is to satisfy the statute of frauds. In *Gronlund v. Andersson,* 38 Wn. (2d) 60, 227 P. (2d) 741, although an action for fraud, the court was dealing with an earnest-money receipt which contained the precise words relied upon here, and held that such words had nothing to do with the application of the parol evidence rule to an oral contract relating to improvements. We there said:

" . . . There seems to be some suggestion that, since the earnest-money receipt given by the sellers to the buyers contains the words, *'There are no verbal or other agreements which modify or affect this agreement,'* it was a violation of the parol evidence rule to introduce evidence concerning the statements of the real-estate agent as to the sufficiency of the water supply. Even were the quoted clause contained in the contract of sale, this contention would be quite without merit; for, where the issue is whether a contract was procured by fraud, the doctrine that parol or other extrinsic evidence is inadmissible to contradict, vary, or explain the terms of a written contract is inapplicable. See Annotation, 56 A. L. R. 13. Parol evidence of false and fraudulent representations inducing one to enter into a written contract is admissible notwithstanding the contract contains an express recital that there have been no representations, or that all oral representations shall be inoperative. *Dieterich v. Rice,* 115 Wash. 365, 197 Pac. 1. But, in the present instance, the clause in question was not in the contract of sale at all, but in the earnest-money

---

[2]Neither plaintiffs nor defendant intended the earnest money agreement . . . which made no mention of paving West 105th Street, and under which each purchase was made, to be a complete and comprehensive record of the entire agreement between the respective buyers and the seller. . . . "

receipt, a document which, for our purposes, was no more than a contract to enter into a contract of sale within a specified time. *An agreement concerning the adequacy of the water supply would not vary or modify such a contract in any sense, and in fact would have nothing whatever to do with it.*" (Additional italics ours.)

A similar view was expressed in *Whaley v. Milton Const. & Supply Co.* (Mo. App.), 241 S. W. (2d) 23:

"It is next urged that the execution of the earnest money receipt was the final act of the parties expressing the terms of their agreement, and that all prior negotiations and agreements were merged therein, and for that reason the contract sued on could not be established without violating the parol evidence rule.

"The rule referred to has no application to the facts in this case. The original contract between the parties was oral, and it does not appear that the execution of the earnest money receipt was intended as a reduction of that entire contract to writing. The purpose of the earnest money receipt was to bind the bargain, and its terms were limited to the terms of the sale. It contained nothing in relation to that part of the agreement that had to do with the construction of the house. Its purpose was merely to acknowledge receipt of the earnest money, identify the property to be conveyed, and specify the terms of the sale and the time and place of closing. Nor were the terms of the contract with reference to the character of the building to be constructed so related to the subject matter of the sale and conveyance of the property as to require, under the parol evidence, their inclusion in the earnest money contract before they could be enforced. Oral proof of the terms of the contract with respect to the kind of house contracted for in no way tended to vary, add to, or contradict the earnest money contract. *Scott v. Asbury*, Mo. App., 198 S. W. 1131; *Corn v. McDowell*, Mo. App., 185 S. W. 235; *Bowers v. Bell*, 193 Mo. App. 210, 182 S. W. 1068; *Hart v. Riedel*, Mo. App., 51 S. W. 2d 891; *Eggimann v. Houck*, Mo. App., 240 S. W. 478; *Meyer v. Dubinsky Realty Co.*, Mo. App., 133 S. W. 2d 1106; *Morris v. Mahn*, 208 Mo. App. 575, 235 S. W. 827; *Heath v. Beck*, Mo. App., 231 S. W. 657."

Indeed, the objection was that the matter was not dealt with in the earnest-money receipt. Counsel's objection is:

"MR. TOWNE: I object, Your Honor, to any testimony regarding other things that were to be done in addition to the matters incorporated in the earnest money agreement."[3]

It would be strange indeed if all of the terms of sale were required to be in an earnest-money receipt. The entire method of selling real estate would have to be revised.

██ ". . . The parol evidence rule does not exclude evidence of an oral agreement which the parties could not reasonably be expected to embody in the written agreement." 55 Am. Jur. 573, 574, § 98.

██ Where a contract required to be in writing is in writing, an independent collateral agreement with reference to the same subject matter may be in parol where the statute does not require it to be in writing. *Brumley v. Miller*, 2 Shannon's Cases 454 (1877); *Lewis v. Turnley*, 97 Tenn. 197, 36 S. W. 872 (1896); *McGannon v. Farrell*, 141 Tenn. 631, 214 S. W. 432; *Haynes v. Morton*, 32 Tenn. App. 251, 222 S. W. (2d) 389.[4]

The so-called parol evidence rule is not an exclusionary device to prevent the introduction of oral testimony. The primary test for applying it was stated in *Gaffney v. O'Leary*, 155 Wash. 171, 283 Pac. 1091, as follows:

"The first question is whether the entire contract of the parties was embodied in the order referred to and therefore was not subject to be supplemented by oral testimony. The well settled rule is that, where it appears that only a part of a contract is in writing, the part not in writing may be proved by oral testimony in so far as it is not inconsistent with the written portion. *Interstate Engineering Co. v. Archer*, 64 Wash. 629, 117 Pac. 470. . . ."

---

[3]"The rule is subject to an exception relied upon by appellant, that it '. . . has no application to a collateral agreement upon which the instrument is silent, and which does not purport to affect the terms of the instrument.' (*Savings Bank of So. Calif. v. Asbury*, 117 Cal. 96, 103 [48 P. 1081]; 18 Cal. Jur. 2d, Evidence, § 266, p. 750.)" *Dillon v. Sumner*, 153 Cal. App. (2d) 639, 315 P. (2d) 84.

Accord: *Goerig v. Elliott*, 27 Wn. (2d) 600, 179 P. (2d) 320.

[4]". . . So where there is an oral collateral agreement not contradicting the terms of a written agreement, the fact that the written agreement is within such an enactment does not prevent the collateral agreement from being enforced without written evidence." 8 Halsbury's Laws of England (3d ed.) 112, § 196.

The situation is reminiscent of Judge Robinson's words in *Bond v. Wiegardt,* 36 Wn. (2d) 41, 216 P. (2d) 196:

"We are here concerned with the mysterious parol evidence rule, the recondite character of which has traditionally provided a sore trial for even such eminent authorities as Thayer, who wrote of it that, 'Few things are darker than this, or fuller of subtle difficulties' (Thayer, A Preliminary Treatise on Evidence at the Common Law, chapter 10, p. 390), and Wigmore, who described it as 'the most discouraging subject in the whole field of Evidence' (9 Wigmore on Evidence (3d ed.) 3, § 2400). . . ."

■ At the time of the execution of the earnest-money receipts, the contract was partly, if not wholly, executory on both sides, so that our decision in *Nielsen v. Northern Equity Corp.,* 47 Wn. (2d) 171, 286 P. (2d) 1031, controls:

"Since the earnest money agreement was executory on both sides, no new or additional consideration was necessary to make the modification agreement enforcible. *La-Plante v. Hubbard,* 125 Wash. 621, 217 Pac. 20; *Hunters Cattle Co. v. Carstens Packing Co.,* 129 Wash. 377, 225 Pac. 68; *Meyer v. Strom,* 37 Wn. (2d) 818, 226 P. (2d) 218."[5]

■ But we need not rest our decision on that ground alone for at least in the case of respondents Beach, the earnest-money receipt was never signed by the seller, so that in the Beaches' case the parol evidence rule could not possibly apply because there was no written contract.

■ Appellant's argument is that, because the matter of paving the street in question was not mentioned in the earnest-money receipt, the parol evidence rule precludes proof of a collateral oral agreement to pave the street. Such is contrary to the main current of decisional law both

[5] ". . . where a parol contemporaneous agreement is the inducing and moving cause of a written contract, or where a parol agreement forms part of the consideration for a written contract, and it appears that the written contract was executed on the faith of the parol contract or representations, then such evidence is admissible. . . ." *McGregor v. First Farmers-Merchants Bank & Trust Co.,* 180 Wash. 440, 40 P. (2d) 144.

in this country and in England.[6] The law is summarized in the following quotation from 27 R. C. L. 533, § 265:

" . . . Evidence of an oral promise to grade and build a street and to cause city water to be put into it may be given to show an inducement to buy a lot fronting on the street, as such promise is an independent collateral one which need not be included in the deed."

One of the significant cases is *Drew v. Wiswall,* 183 Mass. 554, 67 N. E. 666, in which the supreme court of Massachusetts held:

"It is true that the plaintiff's title to the land comes by deed from the defendants, which is silent as to such an agreement. The rule that a contract in writing cannot be added to or varied by the introduction of oral stipulations or agreements, made before or contemporaneous with its execution, is not violated by holding that the contract proved by the plaintiff was not merged in the deed but was independent and separate, though the sale of the land and building the house furnished the consideration by which it is supported. . . ."

Illustrative of the many cases enforcing collateral oral contracts for improvements made to induce the purchase of real property is *Roof v. Jerd,* 102 Vt. 129, 146 Atl. 250, 68 A. L. R. 235. There the plaintiff sold lots in an undeveloped tract of land near Sarasota, Florida. To induce the defendant to purchase two lots, he was promised orally that streets would be opened, sidewalks laid, water mains and sewers extended, and electric lights provided. The defendant purchased the two lots and executed notes for the balance of the unpaid purchase price. In a suit upon the notes and the contract to purchase, the defendant coun-

---

[6]"Under certain conditions evidence may be given of a parol agreement contemporaneous with and touching the subject matter of a written agreement and as to which the written agreement is wholly silent. The necessary conditions are that the parol agreement shall be entirely collateral to the written agreement, that it shall not contradict the written agreement, and that it shall be proved strictly. The parol agreement will be more readily enforced if it was an inducement to entering into the written agreement. The parol agreement, moreover, must not be such as is required by the Statute of Frauds or otherwise to be in writing." 11 Halsbury's Laws of England (3d ed.) 404, § 657.

terclaimed upon the oral agreement respecting the improvements, but evidence in support of the counterclaim was rejected under the parol evidence rule. However, the supreme court of Vermont reversed and, in its opinion, declared:

"Though this rule is very familiar to the courts, in applying it and its so-called exceptions, they have been much perplexed and have reached conflicting results. Sure it is, that the rule does not exclude parol proof of a prior or contemporaneous oral contract that is independent of, collateral to, and not inconsistent with the written contract, though it relates to the same general subject-matter and grows out of the same transaction. *Green v. Randall*, 51 Vt. 67, 71; *Buzzell v. Willard*, 44 Vt. 44, 48; *Cook v. Littlefield*, 98 Me. 299, 56 Atl. 899, 901; 10 R. C. L. 228. It all depends upon how closely the oral contract is bound to the writing. Williston, Contracts, § 637. It is said, too, that the policy of the acting court is for consideration. *Mitchill v. Lath*, 247 N. Y. 377, 160 N. E. 646. Our own cases, as will hereinafter appear, have been very liberal in construing the rule.

"That the agreement relied upon by this defendant belongs to the class of contracts to which the rule does not apply, we have no doubt. It does not in any way affect the written contract or impair its force or effect. It merely shows an undertaking on the part of the plaintiff not shown by the writing, but collateral to it and independent of it. The bond between the two is that the contract of purchase was the consideration of the parol promise only.

"The Massachusetts cases are especially interesting and instructive in this connection. In *McCormick v. Cheevers*, 124 Mass. 262, the oral contract was for the filling of the land sold. In *Durkin v. Cobleigh*, 156 Mass. 108, 30 N. E. 474, 17 L. R. A. 270, 32 A. S. R. 436, *Cole v. Hadley*, 162 Mass. 579, 39 N. E. 279, and *Drew v. Wiswall*, 183 Mass. 554, 67 N. E. 666, the oral agreements were to grade a street. In *Carr v. Dooley*, 119 Mass. 294, the oral agreement was to construct a sewer. In each of these cases, the oral agreement was sustained on the ground that the contract was independent and could be shown by parol. *Anderson v. American Suburban Corporation*, 155 N. C. 131, 71 S. E. 221, 36 L. R. A. (N.S.) 896, resembles the case in hand very closely. There, the selling corporation had a tract of land which it had divided up into lots. These were being sold by an agent. This agent promised a purchaser that

if he would buy certain of these lots, the corporation would build a street car line to them, put in granolithic sidewalks, extend the water main, and make other improvements on the tract. The sale was made, and made by way of an executory contract. The corporation failed to make good the promise. But the agent there seems to have had a rather unusual sense of honor for one engaged in that kind of an occupation, for when the corporation refused to perform, he took an assignment from the deluded purchaser, and himself sued the corporation. It was held that the oral contract was binding upon the corporation, that it was independent of the written contract, and that it could be proved by parol. . . ."

Similar conclusions were reached in the cases collected in the margin.[7]

The court of appeal in England was confronted with this identical problem in *Jameson v. Kinmell Bay Land Co.,* 47 Times L. Rep. 593 (1931). The report of that case shows:

"An estate company, by their agent, orally promised an intending purchaser of a building plot that a road, marked on a plan shown to him and giving access to the plot, would be constructed by them and be ready for use within a reasonable time. Relying on this promise, the purchaser entered into a written agreement to purchase, and the plot was duly conveyed to him."

The plaintiff sued for the breach of the oral agreement. The court held:

" . . . that the oral promise did not form part of the contract to purchase, but was a separate contract, and that evidence of its terms could be given without contravening the rule that parol evidence may not be given to vary the provisions of a written agreement, and . . . that a promise to construct a road, apart from any conveyance of the land over which it was intended to run, was not a 'contract for the sale or other disposition of land or any interest in land' and consequently that an action would

---

[7] *Sale v. Figg,* 164 Va. 402, 180 S. E. 173; *Luck v. Wood,* 144 Va. 355, 132 S. E. 178; *Meyer v. Dubinsky Realty Co.* (Mo. App.), 133 S. W. (2d) 1106; *Reed v. Dent,* 194 Va. 156, 72 S. E. (2d) 255; *Anderson v. American Suburban Corp.,* 155 N. C. 131, 71 S. E. 221; *Boyd v. Tucker* (Tex. Civ. App.), 288 S. W. (2d) 202; *Hart v. Riedel* (Mo. App.), 51 S. W. (2d) 891; *Sparhawk v. Gorham,* 101 Ohio App. 362, 139 N. E. (2d) 652.

lie upon it, although it was oral, without infringing the provisions of s. 40 (1) of the Law of Property Act, 1925."

The agreement to pave the street in nowise conflicts with anything in the earnest-money receipt. It is entirely consistent with it. Indeed, there was no reason to deal with that subject at all in the receipt. The statute of frauds required the contract for the sale to be in writing, but there is no such requirement respecting the paving of the street. No aspect of the parol evidence rule is here involved. It is impossible to escape the conclusion that the promise to pave the street in question was a material inducement to the respondents' purchase, so much so that the court found there was an oral contract to do so.

An additional contention must be dealt with. Appellant asserts that the agreement to pave the street was a sale of an interest in land and void because it was not in writing, and that a contract modifying one required to be in writing must, likewise, be in writing.

██ The answer to the contention is twofold: (1) An agreement to pave a street is not one for the sale of an interest in land and, consequently, may be oral; and (2) where one party has fully performed his part of the agreement, the other party is estopped to assert the defense of the statute.

In *Drew v. Wiswall, supra,* the supreme court of Massachusetts specifically held:

" . . . The agreement by which the defendants undertook to build certain of these streets if the plaintiff would buy the lots and build a house did not relate to or concern the sale of the interest of either in the land, whether treated as house lots or streets. . . ."

In *Tsuboi v. Cohn,* 40 Idaho 102, 231 Pac. 708, 39 A. L. R. 851, the supreme court of Idaho held that an agreement to build and maintain a partition fence was not within the statute. The supreme court of New Jersey in *Okin v. Selidor,* 78 N. J. L. 54, 78 Atl. 770, held a contract to lay and maintain a sidewalk was not within the statute. It is stated in 37 C. J. S. 580, § 74:

" . . . Thus a verbal agreement to make or pay for

improvements on land is one for labor and materials or for payment therefor and is not within the operation of the statute. . . ."

In 29 Halsbury's Laws of England (2d ed.) 240, note (r), it is stated:

"A collateral agreement, not involving an obligation on either party to acquire an interest in land, though depending for its operation upon the acquisition of such an interest, is not within the statute (see *Angell v. Duke* (1875), L. R. 10 Q. B. 174; 12 Digest 127, *844*; *Boston v. Boston,* [1904] 1 K. B. 124, C. A.; 12 Digest 128, *850* (where A. agreed verbally that if B. bought certain land A. would pay B. the amount of the purchase-money); see also *Erskine v. Adeane* (1873), 8 Ch. App. 756; 12 Digest 127, *841*, followed in *Jameson v. Kinmell Bay Land Co.* (1931), 47 T. L. R. 593, C. A.; Digest Supp. (promise to construct a road); *Re Banks, Weldon v. Banks* (1912), 56 Sol. Jo. 362; 12 Digest 121, *799*), although in general a stipulation made in reference to the subject-matter of the contract must be found in it *(Jones v. Lavington,* [1903] 1 K. B. 253, 256, C. A.; 31 Digest 127, *2620*; *Crawford v. White City Rink (Newcastle-on-Tyne), Ltd.* (1913), 57 Sol. Jo. 357; Digest Supp.). . . ."

The street in question had already been dedicated to public use, and the court's conclusion of law that "The paving agreements were not for the conveyance of land and therefore this action is not barred by the Statute of Frauds" is not only fully justified, but, indeed, no other is possible. The judgment requires no more than the paving of the street thus already dedicated.

Full performance by one party removes the case from the operation of the statute. 1 Restatement, Contracts, 260, § 197. It is stated in 37 C. J. S. 762, § 251:

". . . Particularly is this said to be true where the agreement has been completely performed as to the part thereof which comes within the provisions of the statute, and the part remaining to be performed is merely the payment of money or the performance of some act, the promise to do which is not required to be put in writing. . . ."

*Hart v. Riedel* (Mo. App.), 51 S. W. (2d) 891 (1932), states:

"The evidence discloses that plaintiffs were induced to purchase the land by the agreement of appellants to erect a line for the transmission of electricity to the building respondents would, and did, erect on said land. If the agreement fell within the statute of frauds, appellants are in no position to invoke such statute as a defense, because it is a well-settled rule of law that, where one party to a contract, which is within the provisions of the statute of frauds, has fully performed his part of the agreement, the other party cannot avail himself of the statute. In the instant case plaintiffs, if their testimony be true, had fully performed all the terms and complied with all the provisions of the contract. . . ."

The trial court found upon ample evidence that in order to sell its lots appellant advertised it would pave the streets and that it agreed to do so. The record leaves no doubt that this was a major factor inducing respondents to purchase such property. The statute of frauds is designed to prevent, not to promote, fraud. No valid reason appears for releasing appellant from its agreement.

Because the relief is the same irrespective of the number of prevailing parties, it is of no consequence that the actions of two of the original plaintiffs were dismissed below.

The judgment is affirmed.

WEAVER, C. J., MALLERY, HILL, FINLEY, OTT, and HUNTER, JJ., concur.

DONWORTH, J. (dissenting)—In my opinion, the majority has abrogated the parol evidence rule in Washington while giving recognition to its present existence. Furthermore, no effect is given to the so-called "merger clause" contained in each of the several earnest-money agreements involved. The majority summarily disposes of this feature of the agreements by reference to, and quotation from, *Gronlund v. Andersson,* 38 Wn. (2d) 60, 227 P. (2d) 741 (1951), wherein we said:

". . . where the issue is whether a contract was procured by *fraud,* the doctrine that parol or other extrinsic evidence is inadmissible to contradict, vary, or explain the terms of a written contract is inapplicable. . . ." (Italics mine.)

Because no issue of fraud has been raised in this case, either in the pleadings or in the proof, the *Gronlund* case is, of course, inapposite.

The majority rests its decision on some one of three grounds: (1) That the promise to pave was an independent collateral contract; or (2) that it was an oral modification of executory contracts (citing *Nielsen v. Northern Equity Corp.*, 47 Wn. (2d) 171, 286 P. (2d) 1031 (1955), as controlling); or in any event (3) the Beach contract was not signed by the appellant as seller. While each of these grounds will be hereinafter discussed, the first appears to supply the principal basis for this decision. Since this court has not been called upon to pass directly upon this question, it is appropriate that we turn to similar cases resolved by the courts of sister states for persuasive discussion of the legal principles involved. That there is a notable lack of harmony in these decisions is best illustrated by reference to 68 A. L. R., wherein *Roof v. Jerd,* 102 Vt. 129, 146 Atl. 250, is reported at page 235 (the reasoning of which is adopted by the majority), and the companion case of *Mitchill v. Lath,* 247 N. Y. 377, 160 N. E. 646, 68 A. L. R. 239 (reaching the opposite result) is reported at page 239. In my opinion, the reasoning in the latter case is more persuasive than that of the former and should be adopted by this court.

Nowhere in its opinion does the majority define the extent of appellant's contractual undertaking with any one or all of the seven respondents (although the *nature* of their contract, *i.e.* paving "the street in question" is specified). Indeed, the majority finds it unnecessary to mention the fact that the street ordered to be paved by the trial court lies entirely outside the tract developed by appellant and was never owned by it. Nor is mention made of the ironic ruling which permits two of the nine marital communities comprising the original plaintiffs in this action to lose their lawsuits (after dismissal of their respective causes of action in the trial court), and yet permits them to enjoy the fruits of the judgment entered in the other seven causes to the same extent as though they had prevailed.

This action is, in effect, nine separate actions, based on nine different alleged promises made by the same promisor to each of the original plaintiffs under varying circumstances. It is, therefore, necessary to consider separately the facts applicable to each of the seven remaining plaintiffs in order to arrive at a correct decision as to their respective causes of action.

In the early part of 1952, appellant corporation owned approximately twenty acres of farm land situated north of Seattle in King county. This tract, which was nearly rectangular in shape, was platted and subdivided into two blocks, containing a total of eighty-two lots. It was named "Green Arbor." The south boundary of Green Arbor is about 812 feet in length and abuts upon the north margin of west 105th street, which, at the time Green Arbor was platted, was an existing, but unpaved, public thoroughfare. The nine lots involved in this litigation front upon west 105th street.

Appellant planned to, and did, improve the lots within Green Arbor by erecting residential dwellings thereon. These homes were constructed at various times as the development progressed according to certain basic designs created by appellant's architect. These homes, together with the particular lot upon which each was situated, were sold either before, during, or after construction was completed.

This suit was commenced August 7, 1956, by nine married couples as plaintiffs, who then owned the nine lots in Green Arbor abutting on west 105th street. Their complaint set out nine separate causes of action based upon alleged breaches of appellant's separate promises to pave that portion of west 105th street in front of their respective lots. Each owner alleged slightly different facts in his cause of action, although all nine causes related to similar transactions with appellant. All plaintiffs alleged:

"That *as a part of the sale of each lot* in the development, the defendant promised each purchaser that the defendant *would pave West 105th Street adjoining such lots* and that

said promise was part of the consideration for which the purchase price was paid." (Italics mine.)

Plaintiffs further alleged that appellant "paved all of the streets in said development except West 105th Street," and that appellant has since failed and refused to pave the street in compliance with the individual requests of plaintiffs.

The prayer was for specific performance (or, in the alternative, for damages, measured by the cost of paving) of appellant's alleged oral promises.

In its answer, appellant incorporated by reference nine respective earnest-money receipt and agreement contracts under which each of the plaintiff marital communities, except one, purchased from appellant a certain lot (and the home thereon). (At the time of trial, the court found that one plaintiff couple purchased from immediate vendee of appellant, as alleged in the ninth cause of action, but ruled that appellant's promise to pave was not one which ran with the land. Hence, their cause of action was dismissed. Another cause of action (fifth) was dismissed for total failure of proof.)

In one of its affirmative defenses, addressed to *all* causes of action, appellant alleged:

". . . that each earnest money agreement . . . is the sole and only agreement or agreements entered into by . . . [appellant] and each of the respective plaintiffs, and each such earnest money agreement contained the following provision:

" 'There are no verbal or other agreements which modify or affect this agreement.' "

Except for admitting the existence of this clause in their respective earnest-money agreements, plaintiffs denied the remainder of this affirmative defense.

Since two of the nine original causes of action have been dismissed, it is inherent in the majority decision that if six of the remaining seven causes of action were likewise dismissed, the result as to them would be the same. In other words, if appellant is found to have promised at least *one* of the remaining seven respondents that it would pave the

812-foot section of west 105th street abutting Green Arbor, for a width of twenty-five feet, all respondents will benefit equally.

The majority has cited *Barber v. Rochester,* 52 Wn. (2d) 691, 328 P. (2d) 711 (1958) (in which I concurred), as supporting its holding that it was the trial court's duty "to consider all relevant extrinsic evidence, either oral or written, in order to determine if the writing embraced the entire agreement of the parties."

Of course the parol evidence rule does not operate as an exclusionary device to preclude the conditional reception of evidence tending to indicate that an instrument does not embody certain subjects of negotiation. This is so because, as Wigmore (9 Wigmore on Evidence (3d ed.) 97, § 2430) points out:

" . . . the inquiry is whether the writing was intended to cover a *certain subject* of negotiation; for if it was not, then the writing does not embody the transaction on that *subject;* and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect 'parts' of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing.

"In searching for a general test for this inquiry, three propositions at least are capable of being generally laid down:

"(1) Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. . . .

"(2) This intent must be sought where always intent must be sought (*ante,* §§42, 1714, 1790), namely, in the *conduct and language* of the parties and the *surrounding circumstances.* The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. . . .

"(3) In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the *particular element of the alleged extrinsic negotiation is dealt with at all* in the writing. . . ."

(See, also, 3 Williston on Contracts (Rev. ed.) 1819, § 633.) Wigmore further states:

"... The application of the rule, resting as it does upon the parties' intent, can be properly made only after a comparison of the kind of transaction, the terms of the document, and the circumstances of the parties.

"Even in the foregoing classes of transactions, it is rare that the circumstances of a particular case cannot justify a special result contrary to the ordinary one. ... *individual rulings can have little value as precedents unless the entire detail of the documents and circumstances is set forth; and an abbreviation of them is therefore more likely to mislead than to help.* The application of the rule should in almost all instances be left ... to the trial judge's determination." (Italics mine.) 9 Wigmore on Evidence 132, § 2442.

These reasons impel a sacrifice of brevity for the sake of clarity, and they require a detailed analysis of the specific facts applicable to each of respondents' seven separate causes of action and the instruments which appellant claims are the final repositories of the negotiations consumated between it and the respective respondents.

Upon undisputed evidence, the trial court found that:

"Before any of the homes facing W. 105th Street were sold, the defendant caused a sign (Exhibit 3, containing the following:

'GREEN ARBOR
HOMES

| 82 | Restrictions |
|----|----|
| Brand New | Paving |
| Quality Brick | Large Lots |
| Homes | [to] $25,000 |

Lagerquist Bros.—Seattle's Quality Builders.')
to be erected near the entrance to Green Arbor from West 105th St. ..."

(It must also be noted that the sign apparently originally contained a minimum price which was obliterated, so that it read *"to* $25,000." This finding ignores the word "to" which I have inserted above in brackets.)

In the early part of 1953, subsequent to the sales to respondents Becker, Beach, and Spelger, a brochure was

prepared by the real-estate firm which held the exclusive listing for the sale of Green Arbor homes. Designed to promote sales, this brochure, approved by appellant, contained architectural drawings, together with floor plans, for several types of homes. It also contained a map showing the location of the various lots and homes thereon which had been completed, were under construction, or had been planned. On this map, other than the fact that the *south* boundary of west 105th street was not shown, no attempt was made to distinguish it from the streets within Green Arbor. The following sentence appears on the cover:

"The streets will be paved, sewers and storm sewers installed, and curbs and sidewalks will complete the picture."

The homes situated on the lots purchased by the several respondents were in various stages of completion at the time their agreements were made. Therefore, the factual background of the appellant's several transactions with each of the respondents is chronologically set out, with the number of each of respondents' respective causes of action parenthesized following their names:

Becker (1st): Earnest-money agreement dated September 13, 1952; house construction had not then been commenced. He entered into possession of home in February, 1953; was orally advised by one of appellant's officers, at the time the earnest-money agreement was negotiated and afterward, that all streets, including west 105th, would be paved; saw the above described sign; did not see brochure (it had not yet been prepared); sidewalks and curbs were not installed; assumed that west 105th street was a part of Green Arbor; learned about September, 1954 (two years after signing earnest-money agreement) that street would not be paved; provided in earnest-money agreement for the construction of house as follows:

"House to be built on property is a duplicate of house at 10504-9th Ave. Northwest [a previously constructed house]. Of dark red roman brick exterior. Window and studded partition added in double garage."

Beach (8th): Earnest-money agreement dated September 24, 1952; house was substantially completed at that time, only minor things remained to be done; prior to agreement was advised by appellant's sales agent that west 105th would be paved, this was confirmed by one of appellant's officers; was subsequently promised by appellant (per letter of November 13, 1952) that appellant would "pave ½ of the width of West 105th St. . . . for the full length of Lot 1, Block 1, Green Arbor Addition." (The trial court so found.); saw sign; did not see brochure; curbs and sidewalks had been installed; there was a provision in this earnest-money agreement for minor additional modifications to house and lot.

Spelger (7th): Earnest-money agreement dated October 2, 1952; house was then substantially completed, only a few minor things remained to be done; was advised by appellant's agent while negotiating purchase that west 105th street would be paved; brochure had not yet been prepared; no mention in agreement of any changes to be made in house. (Neither of respondents Spelger testified at trial, and therefore the record fails to show that he saw the sign.)

Loussac (6th): Agreement dated May 25, 1953; house was substantially completed at that time, a few minor things remained to be done; before purchasing, was advised by one of appellant's officers that street would be paved; after purchasing, was advised by another of appellant's officers that only one half would be paved; saw sign; saw brochure before purchasing; first learned in spring of 1955 that west 105th would not be paved; earnest-money agreement stated in detail the improvements to be completed by appellant.

Schimpf (4th): Agreement dated November 7, 1953; construction of house had not yet been started; appellant's real-estate agent advised nothing specific concerning paving; saw sign; saw and read brochure; provided in writing, attached to earnest-money agreement, the type of house to be constructed on lot, as follows:

"House to be the Samuel Morrisons design home with recreation room up 5 steps changed as follows . . ."

Then follows a detailing of modifications from the original design and a selection of optional features. These include such features as the recreation room, roof appliances, furnace, kitchen, baths, fireplaces, basement, exterior and lot work. "Lot work" is defined "To include grading only."

(The "Samuel Morrison design" referred to is one of several basic designs prepared by appellant's architect. Appellant had plans and specifications detailing the construction of a house of this design for its use in construction.)

Burkland (2nd): Agreement dated August 27, 1954; house was near completion, only painting remained to be done; entered into possession October, 1954; advised by appellant's real-estate agent during negotiations that west 105th would be paved; saw sign; saw brochure; sidewalks and curbs were partially installed; earnest-money agreement made no mention of painting which remained to be completed.

Harlin (3rd): Agreement dated September 11, 1954; house was partially completed; it had not yet been plastered; saw sign and brochure; had no conversation with appellant's officers but was advised by real-estate salesman (after earnest-money agreement was signed) that paving of one-half of the street would not be completed as the city would not permit it; only mention in earnest-money agreement of any further obligation of appellant is that "Seller agrees to install a single cement tray in utility room without additional cost to the purchaser."

Except for the contracts of the Spelgers and Burklands, these are not ordinary earnest-money agreements. They are extra-ordinary in that each agreement, other than the two just mentioned, provides for the completion by appellant of certain improvements incidental to the lot purchased. Some examples of the manner in which the parties have meticulously detailed the duties of appellant are: "front door to have look-out door" (Beach); "install water tap in back yard" (Loussac); "Lot work—To include grading only" (Schimpf); "install a single cement tray in utility room without additional cost to the purchaser" (Harlin); "studded partition added in double garage" (Becker).

The trial court found:

"Neither plaintiffs [respondents] nor defendant [appellant] intended the earnest money agreement (Exhibit 2) which made no mention of paving West 105th Street, and under which each purchase was made, to be a complete and comprehensive record of the entire agreement between the respective buyers and the seller. In every house sold minor things remained to be done which were not mentioned in the earnest money agreement. Only the Taylor agreement made any mention of installing curbs and sidewalks, although it was conceded by the defendant [appellant] that the agreements included the installation of sidewalks and curbs. *Even where the agreement called for duplication of another house, the house to be duplicated was not entirely completed.* Thus part of the agreement rested in parol and part in writing." (Italics mine.)

From this, the court concluded that:

"The paving agreements of the defendant did not become integrated in the earnest money agreements but rested part in parol and part in writing."

Except for the additional subject of curbs and sidewalks, and the improvements to the lots purchased, the italicized portion of the foregoing finding is in conflict with the provisions made in the earnest-money agreements. The mere fact that appellant promised the Taylors (predecessors in interest of the Fuhrs, whose cause of action was dismissed), in writing, that it would install sidewalks and curbs, did so, and thereafter did the same for other respondents without any writing on the subject, does not affect the completeness of respondents' agreements on the subjects covered thereby.

In their brief, respondents argue:

" . . . since the earnest money agreements were silent with regard to paving, evidence of the parol promise to pave West 105th Street was in no sense at variance with the terms of the earnest money agreements."

A similar contention was met by this court in *Allen v. Farmers & Merchants Bank,* 76 Wash. 51, 135 Pac. 621 (1913):

" . . . It may not be amiss, at the risk of stating a truism, to premise the discussion . . . with the observation that the agreement cannot be called incomplete or ambiguous merely because it does not stipulate concerning

every possible contingency which might arise. It is sufficient, as a complete contract, if it stipulates fully and definitely concerning the things which, on its face, it contemplates. . . ."

All the contracts, except Spelger's and Burkland's, cover two subjects, to wit, the lots and improvements thereon. Respondents have, nevertheless, succeeded in integrating a third subject by parol, *viz.*, the paving of a street not even within Green Arbor. An additional duty is thus imposed upon respondent while his right to receive only the specific amounts stated in the respective contracts remains unchanged.

While there is some distinction between the "partial integration" (relied upon by the trial court) and the "collateral contract" (relied upon in the majority opinion) exceptions to the parol evidence rule (*Buyken v. Ertner*, 33 Wn. (2d) 334, 205 P. (2d) 628 (1949); *Sears, Roebuck & Co. v. Nicholas*, 2 Wn. (2d) 128, 97 P. (2d) 633 (1939); 20 Am. Jur., Evidence, 988, 992, §§ 1135, 1140, annotation and collected cases, 70 A. L. R. 752), that distinction need not be noticed here.

The majority points out that an agreement to pave a street need not be in writing. That is true. But, neither were the provisions of these contracts relating to construction of the houses and improvements to the lots required to be in writing. The parties did, however, integrate those provisions in their earnest-money agreements.

". . . The parol evidence rule does not exclude evidence of an oral agreement which the parties could not reasonably be expected to embody in the written agreement." 55 Am. Jur., Vendor and Purchaser, 573, § 98.

Could the parties reasonably be expected to embody their agreement to pave west 105th street in their earnest-money agreements? In view of the fact that all, except one, of these transactions involve upward of twenty thousand dollars, that the parties have carefully detailed the trivial duties of appellant with respect to construction and improvements, and that west 105th street was an existing public street not

within Green Arbor, I find it difficult to reach a negative answer to the question. The very fact that these instruments contain provisions which are in addition, and wholly unrelated, to the essential requirements of earnest-money agreements (*i.e.* concerning the conveyance of land), indicates to my mind that the parties intended to integrate *all* subjects of prior and contemporaneous negotiation in them.

As previously stated, the majority quotes extensively from, and applies the reasoning of, *Roof v. Jerd, supra.* However, I am of the opinion that the analogy between the present factual situation and that before the New York court of appeals in *Mitchill v. Lath, supra,* is such that the reasoning of the majority in the latter case is more persuasive than the Vermont case, and should be applied here. In the New York case, the defendants owned a farm which they wished to sell. Across the road, on land belonging to another, they owned an icehouse which they could remove. Plaintiff looked over the land, with a view to its purchase, and found the icehouse objectionable.

" . . . Thereupon 'the defendants orally promised and agreed, for and in consideration of the purchase of their farm by the plaintiff, to remove the said ice house in the spring of 1924.' . . . "

Relying upon defendants' promise, the plaintiff purchased the farm for cash and a mortgage containing the usual provisions. Plaintiff later obtained a deed and entered into possession. Defendants failed and refused to fulfill their promise to remove the icehouse.

With reference to the parol evidence rule, the New York court said:

" . . . It does not affect a parol collateral contract distinct from and independent of the written agreement. It is, at times, troublesome to draw the line. Williston, in his work on Contracts (sec. 637) points out the difficulty. 'Two entirely distinct contracts,' he says, 'each for a separate consideration may be made at the same time and will be distinct legally. Where, however, one agreement is entered into wholly or partly in consideration of the simultaneous agreement to enter into another, the transactions are necessarily bound together. . . . Then if one of the agreements is

oral and the other is written, the problem arises whether the bond is sufficiently close to prevent proof of the oral agreement.' That is the situation here. It is claimed that the defendants are called upon to do more than is required by their written contract in connection with the sale as to which it deals. . . .

"Under our decisions before such an oral agreement as the present is received to vary the written contract at least three conditions must exist, (1) the agreement must in form be a collateral one; (2) it must not contradict express or implied provisions of the written contract; (3) it must be one that parties would not ordinarily be expected to embody in the writing; or put in another way, an inspection of the written contract, read in the light of surrounding circumstances must not indicate that the writing appears 'to contain the engagements of the parties, and to define the object and measure the extent of such engagement.' Or again, it must not be so clearly connected with the principal transaction as to be part and parcel of it.

"The respondent does not satisfy the third of these requirements. It may be, not the second. We have a written contract for the purchase and sale of land. . . .

" . . . At least, however, an inspection of this contract shows a full and complete agreement, setting forth in detail the obligations of each party. On reading it one would conclude that the reciprocal obligations of the parties were fully detailed. Nor would his opinion alter if he knew the surrounding circumstances. The presence of the ice house, even the knowledge that Mrs. Mitchill thought it objectionable would not lead to the belief that a separate agreement existed with regard to it. Were such an agreement made it would seem most natural that the inquirer should find it in the contract. Collateral in form it is found to be, but it is closely related to the subject dealt with in the written agreement—so closely that we hold it may not be proved.

"Where the line between the competent and the incompetent is narrow the citation of authorities is of slight use. Each represents the judgment of the court on the precise facts before it. How closely bound to the contract is the supposed collateral agreement is the decisive factor in each case. . . .

" . . . A line of cases in Massachusetts [some of which are cited by the majority in the *Roof* case], of which *Durkin v. Cobleigh* (156 Mass. 108) is an example, have to do with collateral contracts made before a deed is given. But the fixed form of a deed makes it inappropriate to insert col-

lateral agreements, however closely connected with the sale. This may be cause for an exception. Here we deal with the contract on the basis of which the deed to Mrs. Mitchill was given subsequently, and we confine ourselves to the question whether its terms may be modified."

Some distinctions between *Roof v. Jerd, supra,* relied upon by the majority, and *Mitchill v. Lath, supra,* are to be noted. In the former, the form of the writing is not disclosed, and the oral promise was to develop facilities *within* the tract to be developed. (Not so in the present case. The promise is to pave a street not within Green Arbor.) In the latter case, the promise was to remove a building from land not within that conveyed, much the same as appellant's promise to pave a street not within the land conveyed in the instant case.

No useful purpose would be served in discussing the numerous cases from other jurisdictions which have reached conflicting results on this same question, although many of these cases are collected and discussed in 68 A. L. R., commencing at page 245. See, also, annotations, 70 A. L. R. 752.

One other feature on this point merits attention. As stated in *Roof v. Jerd, supra,* citing the Mitchill case, " . . . the policy of the acting court is for consideration." The decision of the majority appears inconsistent with the declared policy of this court in *Sears, Roebuck & Co. v. Nicholas, supra* (bill of sale); *Union Machinery & Supply Co. v. Darnell,* 89 Wash. 226, 154 Pac. 183 (1916) (mortgage); *Allen v. Farmers & Merchants Bank, supra;* and *Hockersmith v. Ferguson,* 63 Wash. 581, 116 Pac. 11 (1911) (lease).

The application of the rule in the *Mitchill* case would preclude respondents' evidence of prior or contemporaneous oral promises to pave a street outside Green Arbor, even in the absence of the so-called merger clause contained in each respondent's earnest-money agreement, *viz.,* "There are no verbal or other agreements which modify or affect this agreement."

But here we do have this clause in the earnest-money agreement. The majority seems to me to have failed to give

proper effect to this provision. Either it means something or it is surplusage. With reference to merger clauses, Williston (3 Williston on Contracts (Rev. ed.) 2281, 2282 § 811A) states:

"In most of the situations involving the application of a merger clause the presence of the clause is only an additional reason for reaching the same result that would be reached without it on the basis of the parol evidence rule. . . ."

The cited footnote states:

"The merger clause tends, of course, to establish the intent of the parties that the writing shall be an integration of their agreement. . . . It is not, however, conclusive. Where it sufficiently appears that the writing is incomplete, an oral warranty will be enforced notwithstanding the presence of the merger clause. *Johns-Manville Corp. v. Heckart,* 129 Or. 505, 277 P. 821."

Each respective respondent's earnest-money agreement is complete upon the subjects treated therein. That an oral agreement to pave modifies and affects the earnest-money agreement, there can be no doubt. It enlarges appellant's *obligations,* but does not increase its *rights.* It purports to obligate appellant to pay out $2,250 additional for paving without any increase in the consideration to be paid by respondents. According to respondents, appellant's promise to pave west 105th street rests upon the same consideration which supports its promises embodied in the earnest-money agreements.

We have held that, where parties have expressly agreed in a written contract that there are no verbal agreements other than those expressed therein, evidence of express oral warranties is inadmissible. *Webster v. Romano Engineering Corp.,* 178 Wash. 118, 34 P. (2d) 428 (1934), and cases cited; also, *Jones v. Mallon,* 3 Wn. (2d) 382, 101 P. (2d) 332 (1940). The reasoning of these cases should be likewise applied to the merger clause in the present case. Respondents should not now be permitted to impeach this facet of their contracts by proving that there is another oral agreement (promise to

pave outside Green Arbor) which modifies and materially increases the burdens assumed by appellant therein.

For the foregoing reasons, the testimony as to oral promises of appellant to pave outside Green Arbor, which were made prior to, or contemporaneous with, the execution of respondents' respective agreements, should not have been accepted by the trial court.

The majority also finds an additional ground for upholding the decision of the trial court, *viz.,* that appellant (seller) did not sign the Beach contract, and therefore the parol evidence rule could not apply because there was no writing. This point seems to have gone unnoticed by the trial court and by all parties to the action. In fact, respondent Beach verified the reply, admitting the existence of the merger clause in his contract. It is not correct to say that a writing does not exist simply because its contents are insufficient to satisfy the statute of frauds.

While not mentioned in the findings of fact, the trial judge did comment in his memorandum opinion that, subsequent to the execution of their earnest-money agreement (September 24, 1952), appellant, by letter of November 13, 1952, promised Mr. Beach that he would pave west 105th street. The trial court noted that since the original agreement was still partly executory, the consideration for the original agreement would support the subsequent modification. The majority recognizes and approves this reasoning, holding our decision in *Nielsen v. Northern Equity Corp., supra,* to be controlling. But what was the extent of appellant's promise under this modification?

"Paving street on Lot 1, Block 1, Green Arbor Addition, *the full length of Lot* on West 105th Street *but only the ½ of the street adjoining said property.*" (Italics mine.)

The trial court so found.

This promise became impossible to perform in 1954, when the area involved in this case (including west 105th street) was annexed to the city of Seattle, because the city would not thereafter permit appellant to pave only *one-half* of the street.

Exhibit 6 is a letter from Mr. Spelger to his mortgage company dated November 10, 1952. (The Spelger earnest-money agreement was executed October 2, 1952.) This letter advises the mortgage company of minor things to be done before the company was authorized to release the balance of the purchase price to appellant. In addition to completing certain work on the house and lot, Mr. Spelger required that appellant "Also furnish us with a letter stating that they [appellant] are going to pave 105th street (Within a certain time)." Apparently, this letter was referred to appellant, because it responded by letter of January 6, 1953:

"In accordance with Mr. Spelger's letter of November *19,* 1952, there were a few items *on said house* to be completed and this letter is written to certify that this work will be completed within 30 days weather permitting of the above date." (Italics mine.)

It is to be noted that appellant's letter made no reference to paving west 105th street. However, conceding appellant's receipt of the balance of the purchase price to be adequate consideration for a modification of the Spelger agreement on the same basis as the Beach modification, still appellant's promise to pave is obviously so vague and indefinite as to be unenforcible.

My review of this record convinced me that the second, third, and fourth causes of action (Burkland, Harlin, and Schimpf) should be dismissed, because in each of these causes the alleged oral promise to pave was made prior to the execution of the respective earnest-money agreements.

While the theory of subsequent modification is somewhat at variance with the allegations of the complaint, there is evidence that, subsequent to the execution of their earnest-money agreements, appellant orally promised respondents Becker and Loussac (first and sixth causes) that west 105th street would be paved, but there is no evidence that these promises were either (a) supported by consideration or (b) made while the contracts of these respondents were still executory, thereby supplying a consideration under the rule of *Nielsen v. Northern Equity Corp., supra.* These promises are not legally enforcible because they are not

supported by a consideration, which is essential to the creation of every binding contract. Hence, the first and sixth causes of action should have been likewise dismissed.

The subsequent modifications of the Beach and Spelger contracts are unenforcible because appellant's promise to Beach became impossible to perform, and appellant's promise to Spelger was so vague and indefinite as to result in no contract. Thus, the seventh and eighth causes of action should have been dismissed.

Furthermore, there is no evidence whatever that appellant ever promised any one of respondents that it would pave that portion of west 105th street abutting Green Arbor (812 feet long), for a width of twenty-five feet, according to city of Seattle specifications. The order which requires appellant to do so is nothing more than a judicial imposition of terms which the parties never agreed upon, but which the court deemed to be reasonable.

The following language of this court in *Baasch v. Cooks Union, Local No. 33,* 99 Wash. 378, 169 Pac. 843 (1918), is appropriate in considering the issues in the case at bar:

" . . . We think the lower court was in error. The guide for its rulings is found in the code of legal obligations, rather than in the moral code."

For the several reasons stated above, I would reverse the order of the trial court and direct the dismissal of the seven remaining causes of action.

ROSELLINI, J., concurs with DONWORTH, J.