# Staunton

## CHARLES H. REED AND HYACINTHA V. REED v. ELLIOTT J. DENT, JR., AND ELIZABETH TILGHMAN DENT.

September 10, 1952.

Record No. 3965.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*George B. Bronfen,* for the appellants.

*James H. Simmonds,* for the appellees.

MILLER, J., delivered the opinion of the court.

This is a suit in equity for injunctive relief brought by Elliott J. Dent, Jr., and Elizabeth Tilghman Dent, hereinafter called complainants, against Charles H. Reed and Hyacintha V. Reed, hereinafter referred to as defendants.

A permanent injunction was obtained by complainants against defendants restraining them from removing certain signs from the premises where they reside, and to that decree this appeal was awarded.

Complainants were the owners of a 30-acre tract of land in Arlington county, which is bounded on the north by a public road known as Old Dominion Drive. They desired to develop and sell this land, and to accomplish those purposes, divided it into lots and laid out streets. The subdivision thus formed was named "Woodland Acres." Though the whole of the thirty acres was not immediately laid out in lots, the owners intend to subdivide the entire tract as sales of the lots progress. On some of the lots residences were erected by complainants, and during the latter part of 1948 they began to sell both vacant lots and new homes in the subdivision.

North Edison street is the only street extending into the subdivision from Old Dominion Drive, and thus ingress and egress to and from other streets and sundry lots in that area are had through use of North Edison street.

In the fall of 1948, complainants undertook the erection of a residence on Lot 6, Block E, which lot fronts on the south side of Old Dominion Drive. This lot is situated at the southwest intersection of Old Dominion Drive and North Edison street, and is slightly elevated from the street level. Before completion of the building, complainants erected on the northwest corner of the lot and a few feet back from Old Dominion Drive a sign which consisted of two upright posts supporting a horizontal bar or log from which a board, inscribed "Woodland Acres," is hung. Immediately below this board and also between the upright posts is hung another board on which appears the name, "E. J. Dent, Jr. Developer." Slightly to the front of these signs they placed a smaller board which is fastened between two short upright posts or staves. This third board bears the words "New Homes," along with an arrow which points toward the entrance into the subdivision.

The height of the posts which support the crossbar or log from which the two signs, "Woodland Acres" and "E. J. Dent, Jr., developer," are suspended, is not given. Nor is the length of the crossbar or of the boards upon which the inscriptions are written, stated in the record. However, from pictures filed as exhibits, it appears that the upright posts are about four feet tall and the crossbar from which the boards are hung is about three feet in length, and the two boards slightly shorter. The

elevation of the small sign inscribed ''New Homes'' appears to be about eighteen inches from the surface of the lot.

A low circular stone wall along the edge of the lot in front of and partially surrounding the upright posts, with shrubs growing within the curve of the wall, forms a frame or setting for the signs. The posts, crossbar and boards upon which the inscriptions are written are varnished. They, along with the retaining wall, and shrubs surrounding the signs, are attractively designed and rustic in appearance.

On July 23, 1949, Charles H. Reed and Hyacintha V. Reed, his wife, entered into a contract with Elliott J. Dent, Jr., to purchase Lot 6 and the residence thereon. The contract contained the following provisions:

''An easement will be given the vendor to maintain his present subdivision entrance sign.''

Complainants executed a deed dated August 3, 1949, conveying Lot 6 to defendants. This deed contained the following paragraph:

''Reserving unto the parties of the first part the right to maintain its subdivision sign in its present location, with the right of ingress and egress thereto for the purpose of maintenance and repair.''

During January, 1951, defendant Charles H. Reed removed the short upright staves and board that bore the arrow and words ''New Homes,'' and in March of 1951, he took down the board bearing the inscription ''E. J. Dent, Jr., Developer.'' The removal of these two boards with inscriptions thereon left only the upright posts and the horizontal bar with the board suspended therefrom which contained the words ''Woodland Acres.''

Shortly after removal of these signs some discussion took place between the parties, but Reed refused to allow complainants to replace the board and inscriptions. This suit was thereupon instituted, the purpose of which was to enjoin defendants from interfering with the signs, or any of them, as orginally erected and maintained.

The evidence was heard *ore tenus* by the trial judge. Complainants contended that the upright posts and horizontal bar, and the boards bearing the several inscriptions, *i.e.*, ''Woodland Acres,'' ''E. J. Dent, Jr., Developer'' and ''New Homes,''

along with the stone wall and shrubbery immediately surrounding the posts, constituted "the subdivision sign." Elliott J. Dent, Jr., testified that the sign as thus made up was upon the land when the contract and deed were executed, and as so composed, it was recognized as "the subdivision sign." Under the clause in the deed complainants claimed that they were entitled to maintain permanently the subdivision sign in its entirety, and that they enjoyed an easement to that effect with the right of ingress and egress upon the lot for the purpose of maintaining the sign.

Defendants sought to establish that only the upright posts and horizontal bar with the board bearing the inscription "Woodland Acres" composed the subdivision sign. They also insisted that the purpose, use to which devoted and the character of the sign indicated that it was not intended to remain there permanently. It is earnestly argued that when the purpose sought to be accomplished is kept in mind, and the clause in the deed read with reference to the inscriptions on the boards, the wording of the reservation is uncertain and ambiguous in respect to what makes up "the subdivision sign." They also say that the language of the instrument is incomplete, ambiguous and uncertain insofar as the period of duration and existence of the sign is concerned. Evidence was offered that the "Woodland Acres" inscription and its supports constituted "the subdivision sign." Defendants also undertook to prove that there had been an oral agreement and understanding between the parties at the time that the deed was executed which was to the effect that the signs could and would be removed at the expiration of eighteen months from the date of the deed.

When complainants offered evidence to prove that the posts, crossbar, three boards and all inscriptions thereon, along with the stone wall and shrubs, had existed for some time before the sale of Lot 6 and made up "the subdivision sign," E. J. Dent, Jr., was also allowed to testify that the sign was his means of advertising the property for sale and had proved to be an effective aid in the sale of lots and residences. Though the lots and homes were listed for sale with agents, he said that he used no other mode of advertising but relied upon the subdivision sign as the only means of informing the public that he was the developer of the property and that it was for sale by him.

Complainants' bill also stated that maintenance of the sign was for advertising purposes and that it aided them in the sale of lots and residences. An allegation of the bill is as follows:

"4. Most of the lots and houses are sold by the complainant, Elliott J. Dent, Jr., without the intervention of a real estate broker, and a majority of his customers are attracted into the property by said sign located at the entrance of the subdivision, as well as others having business with said Elliott J. Dent, Jr."

It thus definitely appears that the sign was erected, intended for and used by complainants as an advertising medium to help them in the development and sale of their subdivision property. That being the purpose and object of the sign, it is apparent that the language used in the deed was not intended to impose a servitude in perpetuity upon Lot 6 for the benefit of the subdivision or any area therein.

The court permitted introduction of testimony by complainants and defendants with reference to what composed "the subdivision sign." Though the evidence on that issue was conflicting, there was ample proof to support the chancellor's finding that the posts, crossbar, boards, three inscriptions and arrow, along with the rock wall and shrubs surrounding the immediate area, made up "the subdivision sign." The court, however, declined to allow defendants to introduce any oral evidence to establish that there was an agreement and understanding between the parties when the deed was executed which permitted removal of the signs at the expiration of eighteen months from the date of the deed.

The chancellor was of opinion that the paragraph in question constituted a covenant running with the land, and he also evidently concluded that there was no ambiguity or uncertainty in the clause with reference to the time that the sign could be maintained upon the lot. In a brief opinion delivered at the conclusion of the evidence, he said, in part, "they have entered into an agreement that constitutes a covenant running with the land which will be a restriction on that property if they sold it to anyone else or whoever might acquire it. * * * I realize that somewhere in the background there are some other oral statements that were made but which cannot be considered by the court because they cannot be considered to vary the terms of this type of instrument. * * *"

The final decree held that the several boards with inscriptions, posts, rock wall and shrubs, ''as described in the bill of complaint,'' made up ''the subdivision sign'' mentioned in the deed, and that the reservation of right in that instrument to maintain the sign constituted an easement upon the land. Defendants were ''permanently enjoined from in any wise interfering with the maintenance * * * of said sign by complainants * * * or from doing any act which may interfere with the free enjoyment and use of said easement by the complainants.''

The restriction incorporated in the deed imposed an easement for the sole benefit of complainants. Though Lot 6 is subjected to a servitude and thus complainants enjoy a privilege to use it for a particular purpose, the natural uses and enjoyment of land retained by complainants are not benefited or affected by the restriction. There is no dominant estate to which the easement is appurtenant, nor is the reservation one that was intended to impose a burden upon Lot 6 for all time.

By the clause in question complainants retained an interest in Lot 6, to use it for a particular purpose. The interest thus retained is an easement in gross, ''a mere personal interest in, or right to use, the land of another.'' 6 Michie's Jurisprudence, Easements, sec. 5, p. 470, *Borough Bill Posting Co.* v. *Levy,* 144 App. Div. 784, 129 N. Y. S. 740, *Solana Land Co.* v. *Murphey,* 69 Ariz. 117, 210 P. (2d) 593, *Davis* v. *Robinson,* 189 N. C. 589, 127 S. E. 697, 1 Minor on Real Property, 2d ed., sec. 88, Jones on Easements, secs. 33 and 39, 28 C. J. S., Easements, sec. 4(b), p. 634, 17 Am. Jur., Easements, secs. 11 and 12, pp. 932, 933, 5 Restatement of Law of Property, Servitudes, sec. 454, 130 A. L. R. 1253, 1254, Black's Law Dictionary (3d ed.), p. 637.

The reservation was put in the deed by complainants, the grantors, because it was helpful to them as a means of advertising the sale of other property in the 30-acre subdivision known as ''Woodland Acres.'' That being their purpose, it is clear that it was not contemplated or intended that it remain as a burden in perpetuity upon the full use and enjoyment of the lot conveyed.

No time or period during which the easement shall be effective is stated in the clause or found elsewhere in the deed. The written instrument is incomplete, for the language is uncertain and ambiguous as to the time that the reservation shall remain effective. Thus the period for which it was agreed that it

was to be operative may be shown by extraneous facts and circumstances and parol evidence.

■ "The rule of exclusion of parol evidence has no application where it is apparent from the writing itself that it does not embody the entire agreement. In such case, the writing being incomplete, it must be supplemented by other evidence, not to contradict or vary its terms, but to establish the real contract between the parties." *Farmers' Mfg. Co.* v. *Woodworth,* 109 Va. 596, 601, 64 S. E. 986.

"While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written agreement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply where the writing on its face is ambiguous, vague or indefinite, or does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties." *Shockey* v. *Westcott,* 189 Va. 381, 389, 53 S. E. (2d) 17.

"But parol evidence is admissible to show additional independent facts, contemporaneously agreed upon and not inconsistent with or contradictory of the contract, so far as reduced to writing. *Tuley* v. *Barton,* 79 Va. 387, 392.

"Evidence of circumstance surrounding the parties is admissible, particularly where the contract is ambiguous. If a written contract is so ambiguous or obscure in its terms that all contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument. * * *" 20 Am. Jur., Evidence, sec. 1160.

■ Any relevant evidence offered by defendants which tended to establish a contemporaneous agreement or understanding between the parties to the deed that the easement would terminate at a designated time subsequent to the date of the deed should have been admitted. If, however, defendants' evidence proves insufficient to establish the fact that there was a recognized, intended or agreed time when the restriction would expire as contended for by them, nevertheless the injunction

should, in period of duration, be limited to the time when *complainants* shall have ceased to develop and offer for sale lots or new homes in the 30-acre subdivision known as "Woodland Acres."

The decree appealed from is reversed and the cause is remanded for a new trial not inconsistent with the views expressed herein.

*Reversed and remanded.*