# Richmond

GEORGE C. GEORGIADES V. JOHN H. BIGGS, JR., AND EVA F. BIGGS.

January 16, 1956.

Record No. 4448.

Present, All the Justices.

The opinion states the case.

*Babalas & Breit*, for the appellant.

*Kellam & Kellam*, for the appellees.

MILLER, J., delivered the opinion of the court.

In this case John H. Biggs, Jr., and Eva F. Biggs, his wife, hereinafter called appellees, sought to enforce specific performance of a contract dated May 4, 1953, by which George C. Georgiades, hereinafter called appellant, contracted to buy from them two lots of land. Appellant denied that he was obligated to accept and pay for the lots. In his answer and cross-bill he asserted that the description

of the lots as set out in the written contract was incomplete, ambiguous and misleading. He charged that before he signed the contract, representations were made to him by the seller's agent that the lots were shaped as shown on a diagram that constituted a part of the description and which indicated that the lots were of materially different size and shape from their actual size and shape. He prayed that the contract be declared unenforceable and that the sum of $500 paid by him on account of the purchase price be refunded.

At the trial appellant sought to introduce oral testimony to explain the ambiguity and supply the deficiency in the description and to show that appellees' agent had erroneously, but in good faith, represented the lots to be of the size and shape indicated by the diagram.

The chancellor who heard the evidence *ore tenus* was of opinion that the description was complete and that there was no ambiguity in the contract. Though he allowed appellant to introduce the oral testimony relied upon, and permitted appellees to offer evidence in refutation of appellant's claims so that the record might be complete, yet he declined to consider this testimony in arriving at his decision. He decreed specific performance of the contract and from the decree requiring appellant to accept and pay for the lots, we granted an appeal.

In the spring of 1953 appellant desired to acquire land upon which to erect a ranch type, four-family apartment building. He approached L. H. Copeland, a real estate agent, and advised him of the type of building that he desired to construct and inquired of the agent whether or not he had a suitable lot for sale upon which such a building could be erected. Shortly thereafter Copeland informed appellant that appellees owned the two lots in question, that he had them listed for sale, and believed them to be suitable lots upon which to erect the contemplated apartment building.

After some negotiations with the agent, a price of $3740 was agreed upon and the contract was executed by appellant and appellees.

The description in the contract is as follows:

"[A]ll that certain piece, parcel or lot of land described as follows, to-wit:

"Lots 38 and 39: Block No. 8: Located on the South side of Kingston Ave., between Grove and Capeview Aves. Having a frontage of 115 ft. on Kingston Ave. and running back approximately 150 ft. in shape as set forth."

Immediately following this descriptive language there is a hand-

drawn ink diagram (not made to scale) showing a lot with a frontage of 115 feet by a depth of 150 feet on the eastern side with irregular lines on the western side. This diagram, as it appears upon the face of the contract is reproduced below, as are lots 38 and 39, Block 8, as they actually appear upon plat "A" of record in map book 13, page 38, clerk's office of the Corporation Court of the city of Norfolk.

Appellant testified that the hand-drawn diagram was on the contract when he signed it, and before he agreed to purchase the lots, appellees' agent Copeland told him that the lots had a frontage of 115 feet on the south side of Kingston avenue by a depth southwardly of 150 feet on the eastern side, and 100 feet on the western side to an inset of 30 feet and thence 50 feet southwardly to the rear line. Appellant's testimony as to the statements and representations made to him by the agent are confirmed by Copeland's testimony. After stating that the diagram was on the contract when appellant signed it, Copeland was asked what statement he made to appellant concerning the lots when he undertook to sell them. The agent's answer follows:

"A. The lot was sold to Mr. Georgiades as 115 foot front and 150 feet deep. 100 feet back on the west side over 30 feet from the back fifty. And then, of course, to the line of beginning."

Other testimony of Copeland and that of George H. Fisher, a real estate salesman who was present when Biggs listed the lots with Copeland, was that when Biggs informed his agent of the size, shape and dimensions of the lots, Copeland drew a diagram upon the list-

ing card. This card was offered in evidence by appellant. The description on the card is the diagram and it shows a frontage of 115 feet on the south side of Kingston avenue by a depth southwardly of 100 feet on the west side and then an inset, and thence southwardly to its rear line. It is similar in shape to the hand-drawn diagram upon the contract, but its overall depth is 185 feet instead of 150 feet.

The testimony of a local contractor showed that before executing the contract appellant consulted with him about constructing a four-family apartment building of a certain size and shape upon the lot and that had the lot been 100 feet deep on the west side, the desired building could have been constructed. As the lot turned out to be only 50 feet deep on the west side to the inset, it would not accommodate the contemplated structure.

Appellees were afforded full opportunity to explain the meaning and significance of the diagram in the contract and to deny statements attributed to Biggs by Copeland and Fisher. They availed themselves of this opportunity and both contradicted the testimony of Fisher and that of their agent Copeland. They stated that no representations or statements had been made to Copeland with regard to the dimensions of the lots. Appellee Biggs also specifically contradicted that part of Fisher's and Copeland's testimony which was to the effect that when Biggs listed the lots for sale, he told Copeland their size, shape and dimensions.

The litigants have presented, and the record contains, all relevant evidence having to do with the significance of the diagram and all testimony bearing upon what representations were made by appellees' agent to appellant when the latter executed the contract. The case has been fully developed, and if it be consonant with the ends of justice, we should enter a final decree disposing of the litigation. Section 8-493, Code of 1950.

It is quite obvious that the description of the lots in the written contract is not complete, and it was contemplated that resort would be had to extrinsic evidence to supply the deficiency. The description does not state where the plat upon which lots 38 and 39, block 8, fronting on Kingston avenue, may be found, or is recorded. It does not even state or show in what county, city or state the lots are located. When all descriptive language is read and the shape and dimensions of the diagram are taken into account, the location, size and shape of the lots are uncertain and incomplete.

"The rule of exclusion of parol evidence has no application where

it is apparent from the writing itself that it does not embody the entire agreement. In such case, the writing being incomplete, it must be supplemented by other evidence, not to contradict or vary its terms, but to establish the real contract between the parties." *Farmers Manufacturing Co.* v. *Woodworth*, 109 Va. 596, 601, 64 S. E. 986.

"While it is elementary that parol evidence is not admissible to explain or undertake to qualify a written agreement when it constitutes a complete statement of the bargain, it is equally as elementary that the rule does not apply where the writing on its face is ambiguous, vague or indefinite or does not embody the entire agreement. In such a case, parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties." *Shockey* v. *Westcott*, 189 Va. 381, 389, 53 S. E. (2d) 17. *Reed* v. *Dent*, 194 Va. 156, 72 S. E. (2d) 255; *Young* v. *Schriner*, 190 Va. 374, 57 S. E. (2d) 33.

"Evidence of circumstances surrounding the parties is admissible, particularly where the contract is ambiguous. If a written contract is so ambiguous or obscure in its terms that all contractual intention of the parties cannot be understood from a mere inspection of the instrument, extrinsic evidence of the subject matter of the contract, of the relations of the parties to each other, and of the facts and circumstances surrounding them when they entered into the contract may be received to enable the court to make a proper interpretation of the instrument." 20 Am. Jur., Evidence, § 1160, p. 1014.

It is clear that the entire diagram drawn upon the face of the contract was intended by the agent and the purchaser to be a part of the description, as well as the stated distances of 115 feet and 150 feet shown on the diagram and written in the contract. Unless it was intended to constitute a part of the description, it was meaningless. It is also obvious that the western line of the lots as shown on the diagram is much longer as it extends southward from Kingston avenue to the inset than it actually is on lots 38 and 39, block 8, on plat "A." The frontage on Kingston avenue of 115 feet and the depth of 150 feet on the east side are given on the descriptive diagram. However, the length in feet of the western line, the length of the inset and the width of the lots at the rear are not shown on the diagram nor do they otherwise appear in the written contract. The location of the lots and their description is thus uncertain, incomplete and ambiguous, and those discrepancies must be supplied by extrinsic proof.

The testimony of appellee's agent Copeland and of appellant shows

that the former represented the lot to be 100 feet deep to the inset on its western side, and that he and appellant contracted for the sale and purchase of a lot of that depth to the inset instead of 50 feet deep to the inset as is the parcel made up of lots 38 and 39 on plat "A." Appellees cannot repudiate their agent's statements and are bound by his material representations of fact. 2 Am. Jur., Agency, § 351, p. 273; 3 C. J. S., Agency, § 236, p. 146.

Resort was had by appellees to extrinsic evidence and oral testimony to show that lots 38 and 39 of block 8 were in fact lots numbered 38 and 39 on plat "A" of record in map book 13, page 38, clerk's office of the Corporation Court of the city of Norfolk.

Under the same principle resort to extrinsic evidence to show the true shape and dimensions of the lots intended to be sold by the agent and purchased by appellant should have been permitted.

The record before us contains all of the evidence that should have been considered by the chancellor, and it would be inequitable and unjust to require appellant to accept and pay for the differently shaped and smaller parcel of land.

The decree appealed from will be reversed and, under the authority of § 8-493, Code of 1950, a final decree will be entered in this court dismissing appellees' bill and awarding judgment in favor of appellant for the $500 heretofore paid by him, with interest thereon from the 4th day of May, 1953, until paid.

*Reversed and final decree.*