In re George Howard TRAMMEL, Jr.,
Peggy A. Trammel, Debtors.

Nolan K. BARZEE and Deborah A.
Barzee, Plaintiffs,

v.

George Howard TRAMMEL, Jr. and Peggy A. Trammel and Martha Trammel Cowan and Florence Trammel and Linden McWashington, Assignee and Loudoun Memorial Hospital and Thompson Oil Co., Inc. and Carlyle & Anderson, Inc. and William Kephart and First National Bank of Purcellville, now First Virginia Bank and J.R. Hardy and Marilyn P. Watson, Esquire and Gordon P. Peyton, Trustee, Defendants.

Bankruptcy No. 84–01425–A.
Adv. No. 85–0065–A.

United States Bankruptcy Court,
E.D.Virginia,
Alexandria Division.

Aug. 1, 1986.

Thomas W. Murtaugh, Leesburg, Va., for debtors.

Q. Russell Hatchl, Alexandria, Va., for plaintiffs.

Donald M. Fishman, Wolpoff & Abramson, Fairfax, Va., for Loudoun Memorial Hosp.

Gordon P. Peyton, Peyton & Shapiro, Alexandria, Va., Trustee.

## MEMORANDUM OPINION

MARVIN V.B. BOSTETTER, Jr., Chief Judge.

The issue for determination here involves a dispute over entitlement to proceeds of a sale of real property placed by the principal litigants in an escrow account.

On July 30, 1984, the debtors George H. and Peggy A. Trammel, defendants in this action, executed, together with Mr. Trammel's two sisters, a deed conveying to plaintiffs Nolan K. and Deborah A. Barzee a parcel of property held by the Trammel siblings as tenants-in-common. At the settlement on the property held October 5, 1984, the debtors Trammel and the Barzees entered into negotiations regarding the proper disposition of the debtors' share of the purchase price in view of some nine judgment liens docketed against Mr. Trammel's one-third interest in the parcel[1]. The

---

1. During the period beginning in August of 1966 and ending in September of 1984, seven creditors obtained nine judgments against George H. Trammel, Jr. in various state courts in Loudoun County, Virginia. All of the judgments accrue

parties' agreement was memorialized in a handwritten document dated October 5, 1984:

> It is agreed that $5,242.87 shall be held in escrow by Marilyn Watson, attorney, for the benefit of George Trammel pending order of the U.S. Bankruptcy Court.
>
> Of the sum of $5,242.87, $566.66 is due and owing to House of Lords, Inc. for real estate commission.
>
> 10–5–84
> /s/ Thomas Murtaugh
>
> /s/ Royce Lee Givens
> for Buyer Barzee

The Trammels filed on October 29, 1984 a Homestead Deed setting apart, *inter alia,* their "equity in funds held in escrow by Marilyn Watson, Attorney, for sale of interest of George Howard Trammel, Jr. in 3 acre parcel of land in Loudoun County, Virginia." Thereafter, on November 7, 1984, the Trammels filed a petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 (as amended), 11 U.S.C. §§ 101–151326 ("the Code"), claiming exempt under Code section 522(b)(2)(A) their equity in the proceeds of sale held in escrow pursuant to the October 5th agree-

ment. The debtors received a discharge in bankruptcy on February 11, 1985.

The plaintiffs characterize the dispute between the parties as centered on the intended meaning and legal effect of the October 5th agreement. The plaintiffs argue that the agreement memorializes a contract between the parties under which the plaintiffs were obligated to pay the debtors' share of the purchase price into an escrow account rather than to the debtors' judgment lien creditors. The Trammels' corresponding obligation was to file for bankruptcy holding the property in question exempt, and avoid the judgment liens under section 522(f)(1) of the Bankruptcy Code. Thus, when the plaintiffs received the unencumbered title warranted in the deed[2], evidenced by this Court's order permitting the debtors to avoid the liens, the funds held in escrow would be released to the debtor. The plaintiffs further maintain that the contract created in their favor a consensual lien against the fund, designed to secure the debtor's promise to make good on the covenant of title.

The nine judgment liens remain docketed in the land records of Loudoun County.[3] Consequently, the Barzees present three theories under which they assert the Court

---

interest, and several include attorneys' fees and costs.

Under section 8.01–458 of the Code of Virginia, a state court judgment for money operates as a lien against a debtor's real estate effective from the date of recordation of the judgment in the proper land records. *See* 1950 *Va.Code* § 8.01–458 (Repl. vol.1984). Each of these nine judgments was docketed in the appropriate records, which are compiled and retained in the Clerk's Office of the Circuit Court of Loudoun County, long before the Trammels filed their petition in bankruptcy. Each creditor, by such docketing, obtained a statutory right to satisfaction of his claim by seizure and sale of the encumbered land. *See* 1950 *Va.Code* § 8.01–462 (Repl.vol. 1984). *See generally* 11A M.J. *Judgments and Decrees* § 47 (1978).

In their complaint, the plaintiffs named all seven creditors as defendants. Only a single creditor, Loudoun Memorial Hospital, filed an answer.

**2.** By the terms of the deed, the Trammels conveyed the land "with general warranty and the usual English covenants of title." Section 55–70

of the Code of Virginia deems the use of such language in a deed to be an expression of the following covenants: if the deeded property is improved by a new dwelling, that the dwelling is both free from structural defects and constructed in a workmanlike manner (section 55–70.1); that the grantor has good right, full power and absolute authority to convey the land (section 55–71); that the grantee shall have quiet possession of the land (section 55–72); that the land is free from encumbrances (section 55–72); that the grantor will execute such further assurances as may be requisite (section 55–73); and that the grantor has done no act to encumber the land (section 55–74). 1950 *Va. Code,* § 55–70 (Repl.vol.1981).

**3.** On August 2, 1985, Judge Carleton Penn, sitting in the Circuit Court of Loudoun County, ordered the Clerk of that court to mark as "discharged in bankruptcy" two of the judgments against the debtors. One other judgment is also so marked. As discussed *infra,* however, discharge of these debts in bankruptcy leaves unaltered the liens of these judgments against the land.

may grant them relief, the first based on the October 5th contract, and the remaining two sounding in equity. The plaintiffs first request leave of the Court to proceed under their consensual lien against the funds in escrow, thus enabling them to apply the proceeds of sale to extinguish the liens.

Realizing, perhaps, that the contractual remedy would deprive the debtors of their properly-claimed homestead exemption, plaintiffs present two alternative equitable theories for relief. Under the first equitable theory, the plaintiffs request that the Court release the judgment liens which stand against the property, thus giving effect to the parties' intention that the Barzees receive unencumbered title. The plaintiffs presume that because the judgment lien creditors' liens could have been avoided by the debtor under Code section 522(f)(1), thus leaving the creditors without recourse against the land, no inequity results from extinguishing the liens.

In the alternative, the Barzees request that the Court exercise its equitable power to order specific performance. If the Court orders the debtors to avoid the liens to the extent possible under section 522(f)(1), the plaintiffs request that the Court also order the debtors to apply the funds held in escrow to the unavoided remainder of the judgment liens.

The debtors present a conflicting characterization of the issue before the Court, and urge a different interpretation of the October 5th agreement. For the debtors, the issue at hand is the integrity of the debtors' properly-claimed exemption. The debtors argue that because the filing of their Homestead Deed preceded both execution by foreclosure and sale under the judgment liens and execution upon the alleged consensual lien, the statutory exemption overcomes the liens. Further, the plaintiffs were listed as creditors and therefore received notice of the debtors' schedule of exemptions. Because the plaintiffs failed to object within the prescribed period, they let pass what the debtors maintain

was their sole opportunity to contest the exemptions.

The debtors argue further that the parties intended the October 5th agreement merely to place the debtors' share of the proceeds beyond the reach of creditors pending the debtors' petition in bankruptcy. Therefore, the Trammels characterize the escrow agreement as creating an unconditional trust in their favor rather than reserving a lien against the fund for the Barzees. The Bankruptcy Court's order of discharge, debtors assert, was the order, mentioned in the text of the agreement, intended to trigger release of the funds to the debtors. In furtherance of their position, the debtors point to the absence in the agreement of any reference to satisfaction of the judgment liens. The document's silence is first cited as evidence suggesting that the debtors' recitation of the intent of the parties is the correct one. Second, the debtors argue that the complete silence of the document is unambiguous; consequently, the plaintiffs' evidence regarding the oral negotiations which culminated in the written agreement offends the parol evidence rule.

*Misstatements of the Law*

Before considering the merits of this case, let us first address several of the cross-assertions of the parties which cannot withstand scrutiny. To begin with, the plaintiffs erroneously assert that a section 522(f) lien avoidance proceeding, initiated by the debtor even at this late date, would resolve the dispute at bar. The plaintiffs therefore request an order of specific performance.

■■■■ The plain language of section 522(f) defeats the plaintiffs' argument. The section mandates that:

(f) [n]otwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—

(1) a judicial lien[.]

11 U.S.C. § 522(f). Clearly a debtor may avoid only those liens fixed on the debtor's own property. Further, said liens are only avoidable to the extent that they impair an exemption. Once the Trammels transferred title to the encumbered property, they lost their ability to avoid liens standing against it for two reasons. First, the liens were no longer fixed on property in which the debtors held an interest. *See In re Ziegler,* 20 B.R. 449 (Bankr.S.D.Ohio 1982) (debtor had no exemptable interest in property to which non-debtor held record title). Second, because the debtors could not and did not claim the property exempt, the liens did not impair the debtors' exemption.

Accordingly, the Court rejects at the outset plaintiffs' appeal for an order of specific performance. Even if the Court should interpret the October 5th agreement in the manner urged by the plaintiffs, it is clear that specific performance cannot remedy the plaintiffs' predicament. A lien avoidance proceeding cannot endow the plaintiffs with unencumbered title.

■ The debtors, likewise, err when they argue that a claim of exemption in bankruptcy automatically overcomes liens docketed in the land records if the debtor's homestead deed precedes execution upon the liens. The proposition that the filing of a homestead deed renders unenforceable liens docketed in the land records but not yet executed upon by foreclosure and sale is a tenable one under Virginia law. *See Smith v. Holland,* 124 Va. 663, 90 S.E. 676 (Va.1919); *Wilson v. Virginia National Bank,* 214 Va. 14, 196 S.E.2d 920 (Va.1973) (homestead deed filed after issuance of garnishment summons but before return date protects wages from garnishment); *In re Baum,* 15 B.R. 538 (Bankr.E.D.Va.1981) (*Wilson* holding followed). From *Wilson,* the debtors draw the erroneous conclusion that the filing of a valid homestead deed, augmented by a claim of exemption from the bankruptcy estate, voids the liens which have attached to property claimed exempt.

■ A homestead deed does not *extinguish* judgment liens against exempt property, but merely prevents seizure and sale of the encumbered property in order to satisfy the debt underlying the lien. 8A M.J. *Exemptions from Execution and Attachment* § 15 (1977). The *Wilson* decision did not alter this aspect of Virginia law. Absent a lien avoidance proceeding under section 522(f) of the Bankruptcy Code, liens survive a discharge in bankruptcy and continue in force even on exempt homestead property.[4] *See Long v. Bullard,* 117 U.S. 617, 65 S.Ct. 917, 29 L.Ed. 1004 (1886) (under Bankruptcy Act, liens on property exempt from bankruptcy estate enforceable after discharge); H.Rep. No. 595, 95th Cong., 1st Sess. 361 *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 6316 ("The Rule of *Long v. Bullard* is accepted [in the Bankruptcy Reform Act of 1978] with respect to the enforcement of valid liens on nonexempt property as well as on exempt property ..." (citation omitted)); *In re Weathers,* 15 B.R. 945, 948 (Bankr.D.Kan.1981) (citing cases under the Code). A subsequent purchaser of encumbered homestead property, then, takes the property subject to creditors' liens. *See Blose v. Bear,* 87 Va. 177, 12 S.E. 294 (Va.1890) (creditor may enforce judgment lien upon property when property loses homestead status).

Examination of the debtors' pleadings indicates, however, that the debtors were quite unaware of the fate of judgment liens under the operation of the applicable law. When during discovery the plaintiffs requested that the defendants admit that the judgment liens were valid against the land, the debtors replied that the liens were no

---

4. Of course, once the debtors transferred the property to the plaintiffs, the debtors had an interest in the proceeds, already free of judgment liens, which they claimed as exempt in bankruptcy. Because the judgment liens did not encumber the proceeds of sale, the timing of the Homestead Deed claiming the proceeds exempt has no effect on the enforceability of the liens standing against the land. However, the timing of the deed is material to a determination of the enforceability of the plaintiffs' alleged consensual lien against the escrowed proceeds, to be discussed *infra.*

longer valid by virtue of the debtors' discharge in bankruptcy. The debtors drew the correct conclusion (that the liens could no longer be enforced against them) for the wrong reasons.

The intricacies of the parties' legal errors ordinarily would not be of interest or importance to the Court. In the present circumstances, however, it is critical to garner the viewpoint from which each party entered into the disputed agreement, in view of the fact that the agreement itself is silent on both its intended purpose and the parties' respective obligations.

It is evident that each party intended the October 5th agreement to accomplish something it could not. The plaintiffs, believing that the debtors could still avoid the judgment liens under section 522(f) of the Code, wanted to withhold the proceeds of sale until the debtors freed the property from encumbrances. In contrast, the debtors intended that the money be held safe from creditors until they received a bankruptcy discharge, which they believed extinguished the judgment liens as well as the underlying debts.

By the time the legal errors, and their far-reaching effects, were discovered by the parties, the debtors had validly exempted their interest in the escrowed fund. In conflict, then, are the plaintiffs' interest in the good title warranted by the deed and the debtors' interest in protecting their exempt property. Some of the evidence presented bears upon a proper resolution of this conflict.

*The October 5th Agreement*

The plaintiffs offered the testimony of R.L. Givens, the attorney who represented them at settlement on October 5, 1984, in support of their contention that under the terms of the bargain the purchasers retained a consensual lien in the escrowed fund. A threshold issue is the debtors' challenge to the Court's consideration of Mr. Givens' testimony, which they assert was accepted into evidence in violation of the parol evidence rule.[5]

The parol evidence rule protects the integrity of legal documents by excluding from consideration evidence "of prior or contemporaneous oral negotiations or stipulations ... to alter, vary, contradict, add to, subtract from or explain the terms of a complete, unambiguous, unconditional, written instrument." *Durham v. National Pool Equipment Co.*, 205 Va. 441, 446, 138 S.E.2d 55, 59 (Va.1964). *See generally* 7B M.J. *Evidence* §§ 130–142 (1985). If a written instrument is incomplete, the rule does not exclude parol evidence from the Court's consideration. Because the parties could not intend that an incomplete document embody all the terms agreed upon, judicial consideration of parol evidence would be both appropriate and necessary. *See C.E. Friend, The Law of Evidence in Virginia* § 290 (2d ed. 1983). Similarly, if a document is ambiguous, the rule permits the finder of fact to entertain parol evidence regarding the intended meaning of the ambiguous terms. *See id* at § 292.

The debtors assert that the October 5th agreement is a complete and unambiguous expression of the parties' intentions. Consequently, the debtors oppose the Court's consideration of the testimony of R.L. Givens, the attorney who represented the plaintiffs at settlement on October 5th.

█ In contrast, the plaintiffs find the document both incomplete and ambiguous, and assert that parol evidence is essential for an understanding of the terms of the agreement. The plaintiffs first argue that the phrase "pending order of the U.S. Bankruptcy Court" is ambiguous because the particular court order intended to trigger release of the funds held in escrow is not specified.

It is clear that, without more, it is impossible to discern which of this Court's orders was contemplated by the parties to signal

5. The debtors made no objection at trial based upon the parol evidence rule. The Court nevertheless may consider the doctrine at this juncture, because "[t]he parol evidence rule is regarded as a rule of substantive law, not merely a rule of evidence." 7B M.J. *Evidence* § 131 (1985).

the end of the escrow arrangement. The parties could have planned to request this Court for an order specifically releasing the funds from escrow. Alternatively, the parties could have intended that some order which is routine in the course of the adjudication of a petition in bankruptcy trigger disbursement of the escrowed proceeds. Clearly, the phrase is not unambiguous. The Court, therefore, must look to parol evidence on this point. *See Young v. Schriner*, 190 Va. 374, 379, 57 S.E.2d 33, 35 (Va.1950) (parol evidence admissible to explain term susceptible of more than one interpretation); *Reed v. Dent*, 194 Va. 156, 162, 72 S.E.2d 255, 259 (Va.1952) (parol evidence admissible to prove termination date of easement agreement).

The evidence offered by the plaintiffs, however, goes beyond mere clarification. The plaintiffs seek to prove that several terms of the agreement do not appear in the document. Persuasive on this broader parol evidence issue is the plaintiffs' characterization of the document as incomplete and, therefore, outside the scope of the rule. *See C.E. Friend, supra*, at § 290 (parol evidence rule does not exclude evidence augmenting incomplete document.)

■ At the time the parties entered into this agreement, the debtor did not have a petition before the Bankruptcy Court, yet the agreement recites that the escrow agreement will terminate upon this Court's order. Clearly, the parties agreed to some course of action, not particularized in the writing, which would bring this matter within the jurisdiction of the Bankruptcy Court and would effect a proper disposition of the reserved proceeds. As the document does not set forth this component of the agreement, the document cannot be considered complete. The Court may thus consider the testimony offered, because it bears upon the unwritten particulars of the October 5th document. *See Georgiades v. Biggs*, 197 Va. 630, 633, 90 S.E.2d 850, 854 (Va.1956) (parol evidence admissible to complete a partial description of land subject to sale).

According to the testimony of Mr. Givens, counsel to the Barzees at the time of the agreement, the promise of the purchasers to place the debtors' share of the proceeds in escrow was made in exchange for the Trammels' promise to make good on the covenant of title contained in the deed, ostensibly by filing a petition in bankruptcy and avoiding the liens. Putting aside the misconception that the Trammels could avoid the liens after transferring the property, the plaintiffs recitation of the agreement is a reasonable one. Under the plaintiffs version of the agreement, each party would receive what was due them under the contract of sale.

■ The Trammels argue that the escrow agreement merely placed the funds in trust for their benefit, and was intended to protect the funds from creditors pending their anticipated discharge in bankruptcy. This interpretation completely disregards the uncontroverted fact that the debtors had warranted, but could not deliver, good title to the property. It is inconceivable that a buyer who knew that nine judgment liens encumbered the subject property would proceed with settlement without either some assurance that the liens would be satisfied, or without an appropriate reduction in the purchase price. Consequently, the Court finds the plaintiffs' version of the terms of the October 5th agreement to be the more credible one.

*Consensual Lien*

As noted earlier, the plaintiffs claim that one effect of the agreement was to create a consensual lien in the funds held in escrow as security for the debtors' promise to deliver clear title. The plaintiffs request that the Court determine that the agreement created a lien, and permit them to seek enforcement of their lien. The debtors contend that the existence of a consensual lien is irrelevant for the purpose at hand because the homestead provisions of Virginia law preclude execution on the lien.

The debtors note that the filing of their Homestead Deed, which listed as exempt

the proceeds held in escrow[6], was timely under section 34–17 of the Virginia Code; the debtors argue that the deed therefore protects the fund from creditor process, including enforcement of a pre-existing consensual lien. Section 34–17 reads, in pertinent part:

The real or personal estate which a householder is entitled to hold as exempt may be set apart at any time before it is subjected by sale or otherwise under judgment, decree, order, execution or other legal process....

1950 Va.Code § 34–17 (Repl.vol.1984).

The debtors rely on the interpretation given section 34–17 by the Virginia Supreme Court in Wilson v. Virginia National Bank, 214 Va. 14, 196 S.E.2d 920 (Va. 1973). The Wilson court, presented with a dispute over whether a homestead deed exempting wages was effective when a state court had already issued a garnishment summons attaching the wages, stated:

We construe the language "subjected by sale or otherwise under judgment, decree, order, execution or other legal process" to mean that a homestead deed may be filed at any time before a court order or decree directs a sale or, as in this case, otherwise orders the payment of money by the garnishees to the judg-

ment creditor at a hearing of the garnishment proceeding. See Smith v. Holland, 124 Va. 663, 666, 90 S.E. 676, 677 (1919). Hence we do not agree that the language in Code § 34–17 means, as contended by Virginia National Bank, that property may not be set aside as exempt after it is subject to the lien of the judgment and after a garnishment proceeding has been instituted.

214 Va. at 15, 196 S.E.2d 920 (emphasis in original). The court held that the debtor validly could exempt his garnished wages by filing a homestead deed any time before the return date of the garnishment summons. Until the return date, the court reasoned, the debtor retained an exemptable interest in his wages. The court's order of return, therefore, was the "subject[ion] by ... order" mentioned in section 34–17 which would foreclose the debtor from claiming an exemption. See also In re Baum, 15 B.R. 538 (Bankr.E.D.Va.1981).

■ The Barzees did not execute upon their alleged consensual lien and acquire a decree ordering the escrow agent to pay the proceeds to the Barzees in satisfaction of the lien. Under Wilson, because execution upon the fund in this fashion did not precede filing of the Trammels' Homestead Deed exempting the fund, the deed insu-

6. The plaintiffs argue that, because the debtors' schedules and Homestead Deed exempt the debtors' "equity in funds held in escrow" (emphasis supplied), the debtors failed to exempt any portion of the sale proceeds encumbered by lien. The Court cannot agree.

The intended meaning of "equity in funds held in escrow" is clarified by reference to the October 5th agreement. The agreement explicitly noted that the real estate agent who arranged the sale to the Barzees was owed a commission from the Trammels' share of the proceeds. The conclusion is obvious that the debtors employed the challenged language in order to exempt only their own portion of the escrow fund, leaving untouched the portion due the sales agent. Furthermore, it is a well-settled matter of Virginia law that the homestead statutes are remedial in nature and must be liberally construed. See In re Smith, 22 B.R. 866 (Bankr.E.D.Va. 1982); Dickens v. Snellings, 10 B.R. 949 (Bankr. W.D.Va.1981); In re Perry, 6 B.R. 263 (Bankr.W. D.Va.1980); In re Williams, 3 B.R. 244 (Bankr.E. D.Va.1980); Oppenheim v. Myers, 99 Va. 582, 39

S.E. 218 (Va.1901); Wilkinson v. Merrill, 87 Va. 513, 12 S.E. 1015 (Va.1891). The intrinsic purpose of the homestead provisions is to permit debtors to insulate a portion of their property from the reach of creditors. Plainly, the fact that some property claimed exempt from creditor process would be encumbered at the time of exemption was within the contemplation of the Virginia legislature, for it specifically noted that a debtor could exempt his property up until the moment it was "subjected by sale or otherwise." See 1950 Va.Code § 34–17 (Repl.vol.1984). Thus, the strict reading of the debtors' claim of exemption urged by the plaintiffs sharply conflicts with the intent of the Virginia legislature to protect citizens by providing them an opportunity to insulate even an encumbered stakehold from creditor process.

In view of the manifest intention of the debtors to exempt their portion of the escrow fund, and in consideration of the long-standing mandate to construe liberally the Virginia homestead statutes, the Court cannot accept the plaintiffs' reading of the debtors' exemption.

lates the fund from enforcement of any lien [7]. The lien is not avoided in the sense liens are avoided under section 522(f) of the Code, but is rendered unenforceable by operation of Virginia law.

Thus, no matter how persuasive the plaintiffs' proof that the October 5th agreement created a consensual lien in the escrowed proceeds, Virginia law precludes execution upon the lien. The plaintiffs therefore would gain little from a finding by this Court that a consensual lien exists.

*Release of Docketed Judgment Liens*

The sole remaining issue is the propriety of granting the plaintiffs' request for an order releasing the liens docketed against their property by the Trammels' judgment creditors. This request for relief is both an unusual one and one presenting a unique conflict.

 Implicit in the plaintiffs' request is their contention that their interest in receiving good title to their land should overcome the judgment creditors' justified reliance upon the continuing validity of their liens after the Trammels' conveyance of the property. The plaintiffs' position rests on their assertion that the debtors, had they retained title to the property until their petition in bankruptcy, would have avoided the judgment liens under section 522(f). Because in this hypothetical situation the judgment creditors would have lost their recourse against the land, the plaintiffs urge that no harm results from the entry of an order depriving the judgment creditors of their docketed liens.[8]

 The plaintiffs' claim that they bargained for clear title to the property is legitimate. It is undisputed that the Barzees knew of the judgment liens when they purchased the property, and that the escrow agreement was the result of negotiations over the proper recipient of the debtors' share of the proceeds. It is thus reasonable to conclude that the purchase price reflected the fair market value of the land, although the parties did not present direct

---

7. The parties also disagree over which step in a judgment creditor's efforts to exact payment of his judgment from the debtor's real estate marks the termination of a debtor's ability to exempt the property under the homestead statutes. The debtors argue that a court's order of foreclosure and judicial sale is the "subjection" critical under section 37–14; the plaintiffs urge that the docketing of the judgment in the land records "subjects" the land to the judgment creditor's claim.

The Virginia courts have not clarified the application of section 37–14 in the real estate context beyond the *dictum* in *Wilson. See* 214 Va. at 15 ("[A] homestead deed may be filed at any time before a court order or decree directs a sale[.]"). *See also In re Callender*, 20 B.R. 448 (Bankr.E.D. Va.1982) (noting lack of clarity in text and judicial interpretations of section 37–14). This Court need not do so, for the facts at bar do not properly present the issue. As previously noted, the debtors did not exempt this parcel of real estate in their Homestead Deed, but their interest in the escrowed proceeds of its sale. The debtors' conveyance of the property to the plaintiffs ended the debtors' interest in any proceedings to foreclose the docketed judgment liens. The conveyance itself, rather than the debtors' exemption, regardless of the temporal sequence of docketing, exemption and foreclosure, released the debtors from enforcement actions against the land.

8. As an alternative to complete release of the judgment liens, the plaintiffs and creditor Lou-

doun Memorial Hospital request that the Court transfer the liens against the real estate to the proceeds of its sale held in escrow. Traditionally, a lien may attach to the proceeds of a sale of encumbered property only when the sale transaction destroys the lien against the property, as when a good faith purchaser for value takes title without notice of the lien. *See* 51 Am.Jur.2d *Liens* § 60 (1970). The case *sub judice* presents an entirely different situation. The Barzees had full notice of these liens, and elected to rely on the October 5th agreement to ensure clear title. Consequently, no party has suggested that the sale transaction destroyed the judgment liens against the property; Loudoun Memorial Hospital clearly contemplates that the liens will survive against the property to the extent that the proceeds are insufficient to satisfy the Trammels' judgment debts. On these facts, attachment of these liens to the escrowed proceeds is inappropriate.

Furthermore, a transfer of the liens to the proceeds of sale produces the same result as a complete release of the liens, because for the reasons previously set forth in the text, liens against the exempt fund are unenforceable. In addition, if the Court transferred the judgment liens to the proceeds, the debtors could avoid the liens under section 522(f) of the Code. The requested transfer thus would leave the judgment creditors with no hope of recovery.

evidence on the point. The plaintiffs have not received the benefit of their bargain, for they face the prospect of paying a substantial sum to obtain clear title to their property. Further, the debtors remain in breach of the warranty of good title contained in the deed.

The equitable relief requested by the plaintiffs, however, goes beyond what could have been accomplished had the debtors fulfilled their obligation under the October 5th agreement. Thus, the plaintiffs request the Court to ameliorate the consequences of their failure to adequately negotiate the contract of sale. As previously noted, the agreement could never furnish the plaintiffs with clear title to the land, because the debtors could not initiate a post-conveyance lien avoidance proceeding. Accepting *arguendo* the plaintiffs' assertion that they retained a lien on the proceeds held in escrow, however, the plaintiffs could have gained clear title by enforcing their lien and applying the funds to the debts underlying the judgment liens. The debtors' intervening Homestead Deed, of course, now prevents this course of action.

The remedy suggested by the plaintiffs would be an equitable one if the Court were to consider only the interests of the plaintiffs and the debtors. Release of the docketed liens would vest good title in the plaintiffs; the debtors would retain the benefit of the exemption granted them by Virginia law. The Court, however, is compelled to consider also the interests of the judgment lien creditors.

The debtors' citation of section 522(f) of the Bankruptcy Code provides no aid to this inquiry. Section 522(f)(1), which permits a release of liens in limited circumstances, reflects Congress' resolution of a conflict between the rights of creditors holding judgment liens and the fresh start awarded a debtor by a discharge in bankruptcy. The case *sub judice* presents a wholly different conflict, one between judgment creditors and transferees of a debtor, to which section 522(f) has no relevance.

By virtue of the plaintiffs' incorrect interpretation of the law, they are left with property subject to docketed liens. The operation of the Bankruptcy Code and the Code of Virginia have deprived the plaintiffs of recourse for the debtors' breach of the warranty of good title or the October 5th agreement based upon any lien they may have had on the proceeds of sale. It does not follow, however, that this Court should remedy the injury flowing from the plaintiffs' incorrect legal assumptions by eradicating the security afforded by Virginia law to creditors who hold docketed judgments.

Nothing in the plaintiffs' situation or arguments suggests that the judgment lien creditors, rather than the plaintiffs, should bear the hardship worked by the debtors' valid exercise of their statutory right to exempt property from creditor process. After the transfer of the property to the Barzees, the judgment lien creditors had every right to conclude that, under the law, their liens followed the property into the purchasers' hands. In contrast, the plaintiffs were in error in their belief that the October 5th agreement, even with a consensual lien in the escrowed fund, could ensure a clear title to the property or protect their interests throughout the Trammels' anticipated bankruptcy. The fact that under a completely different set of circumstances the Trammels' judgment creditors could have lost their liens against this parcel of property does not provide adequate justification for the Court to extinguish the liens.

The plaintiffs' plight is compelling. On these facts, however, the Court has no alternative but to allow the plaintiffs to bear the burden of an ill-conceived bargain.

An appropriate Order will enter.